(C.D. 2156)

U.S.D. IMPORTING CO. ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 8, 1960)

*Lawrence & Tuttle (Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: The two protests herein involved, which have been consolidated for purposes of trial, present for determination the question of the proper dutiable status of certain imported depth gauges. The instruments to which protest 58/226 relates, invoiced as "Dräger Depth Gauges with compass needle, dial range up to 300 feet," were assessed with duty at the rate of 75 cents each and 32½ per centum ad valorem, pursuant to the provision in paragraph 368(a) of the Tariff Act of 1930, as modified by the Supplementary Trade Agreement with Switzerland, 90 Treas. Dec. 174, T.D. 53832, for instruments intended or suitable for measuring distance, valued over $2.25 but not over $5 each. The merchandise covered by protest 58/316, invoiced as "Profondimétre," was likewise classified within said paragraph 368(a), as modified, for instruments intended or suitable for measuring distance, but was assessed with duty at the rate of $1.50 each and 32½ per centum ad valorem, as valued at over $5 but not over $10 per unit.

It is claimed in said protests or by amendment thereto that these depth gauges are not measuring instruments within the purview of said paragraph 368(a), as modified, but are provided for in paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as machines, and are, accordingly, dutiable at the rate of 13 per centum ad valorem, as to that merchandise imported after July 1, 1956, but before July 1, 1957, or at the rate of 12 per centum ad valorem, where entered after July 1, 1957, but before July 1, 1958.

As here applicable, the cited provisions read as follows:

Paragraph 368(a), as modified by T.D. 53882, *supra*:

Clockwork mechanisms, and any mechanism, device, or instrument intended or suitable for measuring distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above (except * * *); all the foregoing, whether or not in cases, containers, or housings:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other (except mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity, and except time switches), valued each—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Over $2.25 but not over $5_____ 75c each and 32½% ad val.
Over $5 but not over $10_____ $1.50 each and 32½% ad val.

Paragraph 372, as modified by T.D. 54108, *supra*:

Machines, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

    Other (except \* \* \*) _____ 13% ad val.
                                                                                 12% ad val.

The instrument here in issue is a device worn strapped to the wrist of a diver who desires to remain under water for an extended period of time. This type of diving is described in the record as "Scuba" diving, that is, with the use of "self-contained underwater breathing apparatus." Apparently, a depth gauge is an essential piece of equipment for this pursuit.

A sample of the Dräger depth gauge, minus crystal, dial needle, and compass, is in evidence as plaintiffs' illustrative exhibit 1. It was introduced in that condition to facilitate its being taken apart for examination of its internal structure. A similar type of depth gauge, but of a different make, complete and ready for use, is in evidence as plaintiffs' illustrative exhibit 2. Both articles have dial faces calibrated in feet. The imported item, marked off in 10-foot intervals, is equipped to register a range from zero to 300 feet. On its face, it bears the legend "Depth in Feet."

In the operation of plaintiffs' illustrative exhibit 1, water enters the instrument through a small hole in the housing, which is screened to keep out foreign particles. It fills the hollow spaces around and between the semicircular bands of metal which lie between a center gear unit and the inner wall of the case. The pressure of the water forces the metal bands away from the center. This action causes a hook connected from the bands to the center gears to activate a spring in the gear section which, in turn, moves the swivel on which the dial is attached; "as the pressure increases the dial moves."

The "Profondimétre" involved in protest 58/316 is shown to be an instrument similar to the Dräger gauge, although it does not have a compass and only registers depth. Its principle of operation is much the same, but, whereas plaintiffs' illustrative exhibit 1 contains the circular metal bands, in the Profondimétre there are two diaphragms which are pushed by the pressure of water.

According to the only witness in the case, who is in charge of the claims department for plaintiff, U.S. Divers Co., and has had personal experience with both skin and Scuba diving, and the equipment necessary in connection therewith, the purpose of the subject devices is to indicate the depth to which a diver descends. Depth in feet is determined by the weight in pounds of the pressure of the water. Each half pound of water pressure registers 1 foot of depth. When questioned concerning the accuracy of these gauges in registering water depth, this witness testified as follows:

Q. In other words, it's a very exact measurement?—A. Yes; it is.

Q.° In other words, if I am at one foot level, no matter where I am if I am one foot underneath the surface of the water I will be subjected to a half pound pressure?—A. That's right, except for the fact that some water contains more salt than others. You would be more buoyant, or the pressure would vary considerably. Whereas in fresh water it would be a little bit different.

Q. In other words, this is not an exact reading, then?—A. It's not an exact—no; it is not an exact measurement.

Q. Does it take into account the difference in the pressure between fresh and salt water? Is there any way to adjust this for fresh or salt?—A. No. It's not meant—it's approximate. It doesn't make any difference because it is not that accurate a gauge, anyway. It's not intended to be a perfectly accurate gauge.

MR. GLAD: Thank you. Your witness.

JUDGE WILSON: What you in effect read on that dial is the depth at which you are diving?

THE WITNESS: Approximately, yes. Of course, it would depend on the variance in the metal.

JUDGE WILSON: That's its purpose, to tell how deep you are?

THE WITNESS: That's right.

Counsel for the plaintiffs rest their claim for the exclusion of the instant merchandise from the provisions of paragraph 368(a), as modified, *supra*, upon a two-pronged argument. It is asserted, first, that these instruments are primarily devices to measure water pressure rather than depth and, hence, not a type of article intended to be encompassed within the scope of that provision under the principle that instruments for the measurement of pressure are not therein provided for, citing *Selsi Co., Inc.* v. *United States*, 72 Treas. Dec. 525, T.D. 49235; *Same* v. *Same*, 1 Cust. Ct. 59, C.D. 16. Secondly, it is urged that since the gauges are not intended to provide an accurate measurement, they are not the type of article contemplated by said paragraph 368(a), under the principles expressed in the cases of *United States* v. *United Geophysical Company*, 38 C.C.P.A. (Customs) 137, C.A.D. 451, and *Wagner-Watrous, Inc.* v. *United States*, 6 Cust. Ct. 39, C.D. 419.

In considering the foregoing contentions, it is well to bear in mind that the collector has classified the involved articles as instruments intended or suitable for the measurement of distance, and it must be presumed both that his action is correct and that he has found every fact to exist which is necessary to support his action. *McKesson & Robbins, Inc.* v. *United States*, 27 C.C.P.A. (Customs) 157, C.A.D. 77; *E. I. du Pont de Nemours & Co.* v. *United States*, ibid 146, C.A.D. 75. Accordingly, we are entitled to assume, unless the record establishes otherwise, that these gauges are intended or suitable for measuring depth.

We find no support in the instant record for the contention that "the primary purpose of the depth gauges involved herein is to register

or react to water pressure * * *." It is true, of course, that the depth to which a diver descends is calculated from the pressure of the water, but the evidence relating to the purpose of these instruments establishes that they are intended to indicate depth only. Whether in the sport of Scuba diving water pressure plays a more prominent role than depth poses an interesting question, but there is not a scintilla of evidence addressed to its answer in the record in this case. The gauges themselves are shown to register depth in feet; they are invoiced as depth gauges; and the witness for the plaintiffs agreed that their purpose is "to tell how deep you are."

Since the evidence also establishes that depth gauges are necessary Scuba equipment, it would appear that they are both intended and suitable for the purpose of indicating to a diver the distance below the surface of the water he has traveled.

Are they then, by virtue of not providing a "perfectly accurate gauge," to be excluded from the provisions of paragraph 368, as modified, *supra*, under the principles expressed in the cited cases of *United States* v. *United Geophysical Company* and *Wagner-Watrous, Inc.* v. *United States*, as here claimed?

The article involved in the *Wagner-Watrous* case, *supra*, was an aneroid barometer movement with an altimeter dial. It was classified within the provisions of paragraph 360 of the Tariff Act of 1930 as a surveying instrument and was claimed to be provided for in paragraph 372 of said act as a machine. Upon a record which established that a surveying instrument must be very accurate, whereas the altimeter dials were most inaccurate and not susceptible of use as surveying instruments, the claim of the plaintiff was sustained. Since paragraph 368(a) was not at issue in the case, it is obvious that it can have no bearing upon the matter now before us.

The merchandise involved in the case of *United States* v. *United Geophysical Company*, *supra*, consisted of a type of radar equipment, designed to aid in the detection of surface craft and to provide fairly accurate information as to its range and bearing. This merchandise was classified in paragraph 368(a) of the Tariff Act of 1930 as a mechanism intended or suitable for measuring distance, and was claimed to be provided for in paragraph 353 of said act as an instrument suitable for producing, rectifying, controlling, or distributing electrical energy. The case was submitted for decision upon a stipulation of fact which established, among other things, that the accuracy of the range readings was subject to an error of $\pm 200$ yards on a 6,000 yard range, $\pm 500$ yards or better on a 30,000 yard range; that it was impossible to discern targets at less than 250 yards range; and that, if targets are less than 200 yards apart, their echoes will merge. Upon these facts, the court held that the subject radar equipment was not

an instrument intended or suitable for measuring distance within the contemplation of said paragraph 368. In so doing, the court stated:

> The master rule, of course, in construing the various tariff acts is the ascertainment of Congressional intent. *Chicago Mica Co. et al.* v. *United States*, 21 C.C.P.A. (Customs) 401, T.D. 46927. In so doing, we believe the rule of construction commonly known as *ejusdem generis* is here applicable. In applying that doctrine to the devices described in paragraph 368, *supra*, we find such items as clocks designed to indicate, measure, and to keep time; we find mention of other mechanisms, devices, or instruments intended or suitable for measuring distance, speed, fares, the flowage of water, gas, electricity, and similar uses. We believe that paragraph was intended to apply to instruments designed. to provide more accurate measurements than can be made by the instant device.
>
>      \*      \*      \*      \*      \*      \*      \*
>
> From the evidence in the record, we believe the primary function of the subject device is to *detect* objects, rather than to *measure distances*, although at the same time we are fully aware of the importance of the latter function, no matter how inaccurately it may operate in this respect. However, we do not feel that the admitted errors to which it is susceptible in estimating or measuring distances will permit us to bring it within that degree of accuracy which we feel is required by the articles enumerated in paragraph 368, *supra*. We believe that the subject device does not belong within the provisions of paragraph 368, *supra*, but properly comes within the provisions of paragraph 353, *supra*. [Italics quoted.]

It is at once obvious that the foregoing provides no exact formula for ascertaining the degree of accuracy necessarily required of devices covered by the provisions of paragraph 368(a). The decision simply affirms the proposition that the particular merchandise before the court, with its admitted inadequacies in the field of estimating or measuring distances, fell short of that degree. Equally important in the conclusion reached was the fact that the primary function of the article was detection rather than measurement, and it could not "even *discern* (much less *measure*) targets *at less than 250 yards*." [Italics quoted.]

Here, however, we have an article whose primary function is, in fact, the measurement of distance. How accurately it performs that function is evidently not of great significance to the Scuba diver. Apparently, its purpose is fulfilled if it indicates approximately the depth which a diver has attained. Since an approximate estimate of depth suffices in the use to which the gauge is applied, it would appear that an instrument which records that approximation is, for the purpose of Scuba diving, a depth-measuring instrument. Clearly, it is intended to be used in measuring underwater distances and it is practically suitable for that use. Moreover, the instant record does not reveal how inaccurate these instruments really are. The testimony addressed to that point indicates that a variance in water pressure exists between fresh and salt water, and the gauges can not be adjusted to compensate for that difference. But there is no evi-

dence to show what effect, if any, the change from one element to the other has upon the meter readings.

In our opinion, the evidence in this case is insufficient to overcome the presumption of correctness of the collector's classification of the involved depth gauges as instruments intended or suitable for measuring distance. All claims in the protests are, therefore, overruled.

Judgment will be entered accordingly.