(C.D. 2200)

## VDO INSTRUMENTS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 7, 1960)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *Richard H. Welsh*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: A concern doing business under the name of VDO Instruments in Detroit, Mich., imported certain articles described in the record as bicycle speedometer sets, represented by exhibit 1, and consisting of speedometers, flexible shafts, and hub drives.

The merchandise was classified as devices for measuring speed in said paragraph 368(a) of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 368(a)), as modified by the trade agreement with Switzerland, 90 Treas. Dec. 174, T.D. 53832, and duty was imposed thereon at the rate of 32½ per centum ad valorem, plus 50 cents each.

Plaintiff claims that the said merchandise should be classified as machines, not specially provided for, or parts thereof, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 13 per centum ad valorem.

It is alternatively claimed that the merchandise should be classified as parts of bicycles in paragraph 371 of said act (19 U.S.C. § 1001, par. 371), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and subjected to duty

at the rate of 30 per centum ad valorem; or that they should be classified as articles, not specially provided for, in chief value of metal, in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, *supra*, and subjected to duty at the rate of 21 per centum ad valorem.

At the trial, the following stipulation was agreed to by counsel—

* * * in the event the court holds that the imported merchandise under protest does not fall within the provisions of paragraph 368, then said merchandise is a non-electrical contrivance that utilizes, modifies or applies energy or force, containing as essential parts a magnet employing a magnetic force, and various gears, ratchets, and wheels, which transmit motion and activate the instrument.

* * * that said imported merchandise under protest is in chief value of metal.

The record also discloses that plaintiff, after setting forth its alternative claims, states "However, we rely primarily on the provision for machines or parts thereof," and the brief of plaintiff concludes with a statement that the subject merchandise should be classified as machines, not specially provided for, and subjected to duty at the rate of 13 per centum ad valorem, as provided in paragraph 372, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, *supra*.

The pertinent text of the various provisions of the tariff act above cited is here set forth—

Paragraph 368(a), as modified, *supra*:

* * * any mechanism, device, or instrument intended or suitable for measuring distance, speed, or fares, * * *:

    Mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity, valued over $15 each_____ * * *

*       *       *       *       *       *       *

    Other * * *
        Not over $1.10_____ * * *
        Over $1.10 but not over $2.25_____ 50¢ each and 32½% ad val.

*       *       *       *       *       *       *

Paragraph 371, as modified, *supra*:

Parts of bicycles, not including tires:
    Frames_____ * * *
    Other_____ 30% ad val.

Paragraph 372, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:
    Adding machines_____ * * *

*       *       *       *       *       *       *

    Other * * *_____ 13% ad val.
Parts, not specially provided for, wholly or in chief value   The rate for the
    of metal or porcelain, of any article provided for in any    article of which
    item 372 in this Part.                                        they are parts.

*       *       *       *       *       *       *

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer: Typewriter spools wholly or in chief value of tin or tin plate_____ 21% ad val.

\*      \*      \*      \*      \*      \*      \*

Other \* \* \*_____ 21% ad val.

Two witnesses were called, both of whom appeared for the plaintiff.

Erhard G. Schulenburg testified that for about 2 years he had been service manager for the plaintiff company. His training and qualifications as a professional feinmechaniker (precision mechanic) were not challenged. It is obvious that the purpose of his testimony was to establish the accuracy of a Master Speed Analyzer used for testing bicycle speedometers. On March 12, 1959, he tested a Master Speed Analyzer, and, to use the words of the witness in explaining the test, he stated, "I connected to this generator an impulse counter, and which counted me with the help of the stop watch, every impulse the generator gave me." By means of the generator and the impulse counter, the witness was able to accurately test the number of revolutions per minute of the particular analyzer "just as accurate as can be. \* \* \* Within half a per cent."

The second witness, Hans Von Payr, testified in substance that he had been general manager of VDO Instruments, engaged in importing instruments manufactured in Germany for use on American and European imported automotive vehicles and bicycles. He identified the merchandise on consular invoice No. 32078, a sample of which was received in evidence as plaintiff's collective exhibit 1.

To display his knowledge of the character and utility of the merchandise represented by collective exhibit 1, Von Payr stated that, during the years 1949, 1950, and 1951, he had worked for the German VDO Tachometer Co. in Frankfurt, Germany, and, as an apprentice, had worked in all departments of the company, including purchasing, manufacturing, and repairing of instruments. He acquired information which enabled him to open a United States branch in Detroit, Mich. He also stated that he had seen the instruments installed and used in Detroit.

It may be noted here that plaintiff, at the opening of the trial, admitted that the merchandise under consideration "consists of certain speedometers, or speedometer sets, which are imported for use with bicycles."

Without describing in minute detail the application and performance of the subject merchandise, it is clear from the testimony of Von Payr that the function of collective exhibit 1 is to count the number of revolutions of the included speedometer cable. The speed and mileage of a bicycle would be reflected on the speedometer so that a person operating a bicycle with the use of an instrument such as collective exhibit 1 could easily determine not only the mileage traveled but the rate of speed at which he was traveling.

Von Payr was interrogated as to his tests made on merchandise such as collective exhibit 1 to determine the accuracy of the instrument for speed measuring and speed indicating when attached to bicycles using the Master Speed Analyzer, about which plaintiff's witness Schulenburg had testified.

Tests of some 19 imported speedometer sets were made, the results of which are indicated on plaintiff's exhibit 2, and reflect the rate of accuracy of the speedometer sets when used on tire sizes 26 by 2.00 or 26 by 1.75 under normal conditions. The tests also express the percentage of plus or minus error when a different tire size is used or when the softness of the tire or the loss of tread on a tire occurs.

By reason of the so-called inaccuracies set forth in exhibit 2, plaintiff contends that the instruments cannot properly be classified in paragraph 368 as "any mechanism, device, or instrument intended or suitable for measuring * * * distance, speed * * *," but claims that the articles should be classified in paragraph 372, as modified, as machines, not specially provided for.

At the trial, defendant agreed that in the event the imported merchandise did not come within the provisions of paragraph 368, *supra*, "* * * then said merchandise is a non-electrical contrivance that utilizes, modifies or applies energy or force, containing as essential parts a magnet employing a magnetic force, and various gears, ratchets, and wheels, which transmit motion and activate the instrument." It was further stipulated that the merchandise under consideration is in chief value of metal.

These concessions would apparently justify classification of the device in paragraph 372, as claimed by plaintiff, if the article were not otherwise more specifically enumerated in the tariff act.

In support of its contention that the bicycle speedometer sets in controversy were not within the scope of paragraph 368(a), *supra*, as classified by the collector, plaintiff relies upon the decision of our appellate court in *United States* v. *United Geophysical Company*, 38 C.C.P.A. (Customs) 137, C.A.D. 451, relating to the classification of certain radar equipment as a mechanism, device, or instrument intended or suitable for measuring distances under paragraph 368(a) of the Tariff Act of 1930. The court there said in part—

From an analysis of the evidence, we find the involved radar does not give accurate or exact information, but provides the kind described as "fairly accurate."

The court was further impressed with the fact of record that since "* * * the involved radar equipment cannot even *discern* (much less *measure*) targets *at less than 250 yards*, the applicability of paragraph 368, *supra*, to the distance measuring function of the involved merchandise is so remote as to convince us that Congress did not intend to bring such goods within that paragraph." [Italics quoted.]

The court also observed—

From the evidence in the record, we believe the primary function of the subject device is to *detect* objects, rather than to *measure distances*, although at the same time we are fully aware of the importance of the latter function, no matter how inaccurately it may operate in this respect. * * * [Italics quoted.]

The court concluded that it did not feel "the admitted errors to which it [the radar equipment] is susceptible in estimating or measuring distances will permit us to bring it within that degree of accuracy" required by the articles enumerated in said paragraph 368.

Factual differences between that case and the present one satisfy us that the two cases can be distinguished. In the case at bar, we have a device which was intended and designed for use on bicycles by means of which speed and distance could reasonably be determined and that is its only use. Von Payr testified that the devices like collective exhibit 1 were designed to give as accurate results as possible. Obviously, a speedometer, such as collective exhibit 1, when attached to a new bicycle, would give more accurate results than it would after the tires had become worn or otherwise defective. Moreover, the purpose for which it is used for determining the speed and mileage traveled on a bicycle does not require precision accuracy. The inaccuracies, shown by the tests made by Von Payr, represented by exhibit 2, do not detract from the classification of these speedometers as mechanisms, devices, or instruments "intended or suitable for measuring * * * distance, speed. * * *." The evidence establishes that the articles in dispute are designed and made to give as accurate results as possible in their intended use.

A case quite similar in its overall aspects is *U.S.D. Importing Co. et al.* v. *United States*, 44 Cust. Ct. 80, C.D. 2156, wherein depth gauges used in what is known as "Scuba" diving were held to be devices suitable for measuring distance within the meaning of said paragraph 368. It appears from the opinion of the court in that case that the devices were intended to indicate underwater depth and were "practically" suitable for that purpose, although they were inaccurate and

merely gave an approximate estimate of depth. We quote from our opinion in that case, after referring to the *Geophysical* decision:

Here, however, we have an article whose primary function is, in fact, the measurement of distance. How accurately it performs that function is evidently not of great significance to the Scuba diver. Apparently, its purpose is fulfilled if it indicates approximately the depth which a diver has attained. Since an approximate estimate of depth suffices in the use to which the gauge is applied, it would appear that an instrument which records that approximation is, for the purpose of Scuba diving, a depth-measuring instrument. Clearly, it is intended to be used in measuring underwater distances and it is practically suitable for that use. Moreover, the instant record does not reveal how inaccurate these instruments really are. The testimony addressed to that point indicates that a variance in water pressure exists between fresh and salt water, and the gauges can not be adjusted to compensate for that difference. But there is no evidence to show what effect, if any, the change from one element to the other has upon the meter readings.

Although plaintiff at the trial did not abandon its claims for classification in paragraph 371 or 397, those claims have not been considered in its brief and we, therefore, deem them to be abandoned.

In point "IV" of its brief, plaintiff requests the court to reverse certain rulings on evidence made by the judge (not a member of this division) who heard the case on circuit. Since the matter is not presented to us in appropriate form for action, we shall not consider the "request," as in no event would the proffered evidence, even if admitted, alter our determination of the case.

Upon the record and for the reasons above stated, we affirm the decision of the collector of customs and overrule the protest on all grounds.

Judgment will issue accordingly.