(C.D. 2468)

KELVIN & HUGHES AMERICA CORP. *v*. UNITED STATES

United States Customs Court, Second Division

(Decided June 29, 1964)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *John W. Douglas*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *Richard J. Kaplan*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:   An importation described on the invoice as "Echo Sounding Equipment Type Ms.30." was classified by the collector of customs as depth-sounding devices, instruments, or mechanisms,

intended or suitable for measuring time, distance, or speed, valued over $10 each, in paragraph 368(a) of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 368(a)), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the rate of $1.15 each and 17½ per centum ad valorem. Certain parts thereof were assessed with duty at the following rates:

12½ per centum ad valorem in paragraph 368(c) of the tariff act, as modified, *supra.*

65 per centum ad valorem or 65 per centum ad valorem, plus 3 cents for each part or piece of material, pursuant to paragraph 368(c) of the basic Tariff Act of 1930.

The rate applicable to the depth sounders themselves ($1.15 each, plus 17½ per centum ad valorem), pursuant to paragraph 368(c), as modified, *supra.*

A portion of the merchandise was assessed with a copper tax pursuant to section 4541 of the Internal Revenue Code (26 U.S.C. § 4541). However, that tax is not the subject of protest.

Plaintiff claims that the importation should be classified as articles having as an essential feature an electrical element or device in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and subjected to duty at the rate of 13¾ per centum ad valorem, or, alternatively, as articles suitable for modifying electrical energy and parts thereof, wholly or in chief value of metal, not specially provided for, in said paragraph 353, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and assessed with duty at the rate of 15 per centum ad valorem.

It is further claimed by plaintiff that the rubber items, identified on exhibit 3, should be classified in paragraph 1537(b) of said act, as modified by the General Agreement on Tariffs and Trade, *supra*, or the Presidential notification relating to the proclamation for the accession of Japan to said General Agreement on Tariffs and Trade, 90 Treas. Dec. 280, T.D. 53877, and assessed at 12½ per centum ad valorem as articles in chief value of rubber; and that the paper item described on said exhibit 3 should be classified in paragraph 1413 of said act, as modified by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, relating to the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, as manufactures in chief value of paper, not specially provided for, and assessed with duty at the rate of 17½ per centum ad valorem.

At the trial, the following exhibits were received in evidence:

Plaintiff's exhibit 1—two pages from a catalog, illustrating the MS30 echo sounder in issue.

Plaintiff's collective illustrative exhibit 2—small edition of a fish locator or echo sounder with cord.

Plaintiff's exhibit 3—schedule, identifying the nonmetallic parts imported with the echo-sounding equipment in controversy.

Plaintiff's exhibit 4—illustration taken from one of plaintiff's catalogs, depicting the focusing of the sound equipment.

Plaintiff's illustrative exhibit 5—chart, indicating a recording of a school of fish.

Plaintiff's illustrative exhibit 6—a piece of chart paper, illustrating a recording of fish provided by the instant equipment.

Plaintiff's illustrative exhibit 7—chart.

Plaintiff's illustrative exhibit 8—chart, showing how supersonic waves are bent by increases in depth and temperature.

Plaintiff's illustrative exhibit 9—pamphlet, illustrating and describing the type "MS26 A & F" Kelvin & Hughes echo sounder for survey sounding.

Plaintiff's illustrative exhibit 10—pamphlet, illustrating and describing type "MS26 B & G" Kelvin & Hughes echo sounder for navigation.

The only witness who testified in this case was Banton Hall Schaub, who appeared on behalf of the plaintiff. Schaub, who has been associated with the plaintiff company since its founding 2½ years ago, is president and administrative head of said company and directs the activities of the three divisions thereof, the Marine Division, the Aviation Division, and the Industrial Division. Due to his educational, naval, and business background, the witness was well qualified to testify as to the operation and function of the MS30 echo-sounding equipment in issue.

The instant echo-sounding equipment consists of two units, namely, Recorder and Hull units. A transmitter in the recorder generates and transmits an electrical wave train to the hull unit or transducer located beneath the ship in contact with the water. The transducer converts the electric oscillations to mechanical oscillations. This results in the emission of a sound wave into the water from the face of the transducer. The sound wave progresses outward into the water from the vessel in a cone of energy until it strikes an object, at which point a portion of the sound wave is reflected back to the transducer where it is reconverted to electric energy and returned to the recording unit where it activates a stylus and marks the recorder paper at the moment that the electric energy reflection is returned. The length of time between the transmission of the pulse and the receipt of the returning sound echo is the length of time it took the sound energy to pass from the face of the transducer to the object and back to the face of the transducer. During that time, the stylus has been rotating

so that the distance the stylus has moved is an approximation of the distance from the transducer to the object reflecting the echo.

Schaub stated that the object or purpose of the instant echo-sounding equipment is to detect the presence of fish in the water. Articles like the MS30 echo sounder are sold exclusively to commercial fishermen. They are portable and can be used on large dories or permanently mounted aboard larger trawlers. One is not able to determine the exact location of fish with an echo sounder such as the MS30, because there are a number of factors which would affect one's ability to determine the distance from the transducer to the fish, several of which factors are out of control of the operator of the equipment. For example, the salinity, temperature, and pressure of the water in which the sound is being transmitted all affect the velocity. When the MS30 echo sounder is in use, the operator does not know the exact velocity at which the sound is traveling in the water and does not know the speed of the stylus and, therefore, is only able to get an approximation of the distance between the transducer and the echoing object by measuring the length of the arc from the transmission pulse to the returning echo.

According to Schaub, the MS30 echo sounder operates on a basic mechanical or geometric principle very similar to the way radar operates. In radar, an electro-magnetic pulse is sent out, whereas, in the case of the echo sounder, it is a mechanical pulse or a sound wave. An MS30 echo sounder is nowhere near as accurate as a radar.

When asked whether the MS30 echo sounder contained an essential electrical feature, the witness replied that it is almost entirely an electrical apparatus since all the features in it are electric or electronic.

Witness Schaub stated that his company does handle echo sounders which measure distance and referred to his company's MS26 echo sounders, models "B & G," which are specifically designed and used for navigation. Said echo sounders are described in plaintiff's exhibit 10.

Reference was also made to plaintiff's exhibit 9, a pamphlet describing surveyor sounding equipment by the plaintiff company, models "A & F," MS26.

The witness testified that the articles described in exhibits 1, 9, and 10 are all known as echo sounders in the trade and are all sold as echo sounders. He stated, however, that exhibit 1 is used solely by fishermen to locate fish and it is sold and used on that basis, whereas the echo sounders referred to in exhibits 9 and 10 are depth-sounding devices used to measure distance.

Exhibit 1 is not illustrative of a depth-sounding device because it does not have provision for making accurate readings for determining depth. To Schaub's knowledge articles described in exhibit 1 are not

utilized by passenger ships and are not sold to any shipping company for navigational purposes. Schaub stated that, based upon his experience and knowledge in the business, the MS30 echo-sounding equipment before the court would not constitute a good delivery for a depth-sounding device and reiterated the statement that it is not sold as a depth-sounding device.

Near the close of the trial the witness was interrogated by the court, as follows:

JUDGE FORD: I think you testified that Exhibit 1 was used solely for a fisherman's use to locate fish?

THE WITNESS: Yes, sir.
JUDGE FORD: That is its only use?
THE WITNESS: Yes, sir.
JUDGE FORD: Sold on that basis?
THE WITNESS: Yes, sir.
JUDGE FORD: And, used on that basis?
THE WITNESS: That is correct, sir. * * *

In support of its contention that the type MS30 echo-sounding equipment in issue is not within the provision for depth-sounding devices, instruments, or mechanisms intended or suitable for measuring time, distance, or speed, in paragraph 368 of the tariff act, as modified, which was invoked by the collector of customs, plaintiff makes reference to the case of *United States* v. *United Geophysical Company*, 38 CCPA 137, C.A.D. 451. In that case, certain radar equipment which had been classified by the collector of customs as a mechanism, device, or instrument intended or suitable for measuring distances in paragraph 368(a) (1) and (2), was held, by virtue of the admitted errors to which it is susceptible in estimating or measuring distances, not to be so classifiable. In the course of its decision, the appellate court stated:

From the evidence in the record, we believe the primary function of the subject device is to *detect* objects, rather than to *measure distances,* although at the same time we are fully aware of the importance of the latter function, no matter how inaccurately it may operate in this respect. However, we do not feel that the admitted errors to which it is susceptible in estimating or measuring distances will permit us to bring it within that degree of accuracy which we feel is required by the articles enumerated in paragraph 368, *supra.* We believe that the subject device does not belong within the provisions of paragraph 368, *supra,* but properly comes within the provisions of paragraph 353, *supra.* [Italics quoted.]

From the uncontradicted testimony of witness Schaub in the instant case, it appears that, whereas certain echo-sounding equipment is produced which is intended or suitable for measuring distances by a depth-sounding operation, the instant MS30 echo-sounding devices are used solely by fishermen to locate fish and, because of their inac-

curacy, they are not and can not be used as depth-sounding devices used to measure distances.

Defendant, in its brief, makes reference to the following cases decided by this court.

*Gerhard & Hey Co., Inc.* v. *United States*, 3 Cust. Ct. 217, C.D. 237, which involved merchandise, described on the invoice as "1 MS 111 Echo Sounder Recording Installation complete with all accessories No. 1466," which was classified by the collector of customs as a mechanism, device, or instrument intended or suitable for measuring distance in paragraph 368 of the Tariff Act of 1930, and claimed to be classifiable as a machine, not specially provided for, in paragraph 372, or as a surveying instrument in paragraph 360 of said act. The court there held that, since it was uncontradicted that the echo-sounding device in issue was a "mechanism, device, or instrument intended or suitable for measuring * * * distance," the distance measured being from the bottom of the ocean to the surface thereof, the decision of the collector of customs should be affirmed.

*Marconi International Marine Communications Co., Ltd.* v. *United States*, 30 Cust. Ct. 162, C.D. 1515, dealt with the proper classification of an echometer projector complete with gaskets designed for use as part of a depth-sounding device. In the course of the opinion, the court in sustaining the collector's classification of the imported article as parts of mechanisms, intended or suitable for measuring distance, stated—

It appears that the primary function of the mechanism is depth sounding inasmuch as early in the testimony of the witness Flash it was stated that the average cargo vessel from 5,000 tons up is so equipped, and, later, that echometers are part of the equipment of approximately 80 per centum of all passenger and cargo vessels and that said equipment is used primarily as an aid to navigation. It is apparent from the evidence that the use of an echometer by fishermen in locating fish and by cartographers in charting the ocean bed is secondary to the chief use to which the mechanism is dedicated aboard ships as a depth-sounding device, and it is the chief use of the article which must control its classification. (*Petry & Co.* v. *United States*, 3 Ct. Cust. Appls. 348, T.D. 32906.)

*Marconi International Marine Communication Co., Ltd.* v. *United States*, 33 Cust. Ct. 435, Abstract 58526, adhered to the decision promulgated in the prior *Marconi* case, the record in which had been there incorporated.

In *U.S.D. Importing Co. et al.* v. *United States*, 44 Cust. Ct. 80, C.D. 2156, this court found the evidence there presented was insufficient to overcome the presumption of correctness attaching to the collector's classification of certain depth gauges used in "Scuba" diving as instruments intended or suitable for measuring distance in paragraph 368 of the Tariff Act of 1930, as modified, and overruled plaintiffs' claim for classification of said articles as machines in paragraph 372 of said act.

*VDO Instruments* v. *United States*, 45 Cust. Ct. 77, C.D. 2200, dealt with bicycle speedometer sets, classified for duty purposes as devices for measuring speed in paragraph 368(a) of the Tariff Act of 1930, as modified. Following the reasoning of the *U.S.D. Importing* case, *supra*, this court affirmed the decision of the collector of customs and overruled the protest claim for classification as machines, not specially provided for, in paragraph 372, as parts of bicycles in paragraph 371, or as articles of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930, as modified.

It would appear from the foregoing that the cases cited by defendant are distinguishable from the factual situation presently before us for the reason that the evidence offered in said cases was insufficient to overcome the presumption of correctness attaching to the collector's classification.

The uncontroverted record before the court in the instant case discloses that the type MS30 echo-sounding equipment in issue is used solely by fishermen to locate fish and the apparatus in issue has been adequately distinguished from echo-sounding equipment such as the MS26 type produced by the plaintiff company which is used on ships for navigational purposes. The latter, due to its ability to supply accurate depth readings, is encompassed by the tariff provision for depth-sounding devices intended or suitable for measuring distance in paragraph 368(a) of the Tariff Act of 1930, as modified, whereas the type MS30 equipment before the court should be excluded from said provision due to the inaccuracy of its functioning and the fact that its primary function is to locate fish rather than to measure distance, following the rationale of the *United Geophysical* case, *supra*.

In view of the fact that the echo-sounding equipment in controversy has as an essential feature an electrical element or device, said merchandise comes within the provision primarily claimed by plaintiff for articles having as an essential feature an electrical element or device in paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*, and dutiable at the rate of 13¾ per centum ad valorem. Metal parts thereof are likewise subject to such classification and duty assessment. The following parts thereof, being composed in chief value of rubber, should be classified as articles in chief value of rubber, in paragraph 1537(b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and dutiable at the rate of 12½ per centum ad valorem:

On invoices 31147 and 31149, item number 12—rubber strip.

On invoices 31146, 31147, 31148, and 31149, item number 13—gasket.

On invoice 31148, item number 18, and on invoice 31149, item number 22—window joint.

On invoice 31147, item number 27–28; invoice 31148, item number 24–25; and invoice 31149, item number 28–29—switch cover pads.

The items of recording paper, appearing on invoices 31146, 31147, 31148, and 31149, item numbers 45, 47, 42, and 48, respectively, being composed in chief value of paper, are properly subject to classification as manufactures in chief value of paper, not specially provided for, in paragraph 1413 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, for which duty at the rate of 17½ per centum ad valorem is provided.

To the extent above indicated, the claims in the protest are sustained. All other claims are overruled.

Judgment will be issued accordingly.