(C.D. 3151)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 10, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: These six protests, consolidated at trial, relate to importations from Canada of two types of echo-sounding instruments, namely, flasher units and recording units. Both types were classified as depth-sounding instruments under item 712.10 of the Tariff Schedules of the United States which provides for—

Electrical measuring, checking, analyzing, or automatically-controlling instruments and apparatus, and parts thereof:

 &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Other:
Ships' logs, and depth-sounding instruments
and apparatus, and parts thereof:
Instruments and apparatus_____ 92¢ each +
14% ad val.

The importer claims they are fish-finding devices dutiable either at 12 per centum ad valorem under item 712.50 of the tariff schedules as other electrical measuring, checking, or analyzing instruments or at 11.5 per centum ad valorem under item 688.40 of said schedules as electrical articles, not specially provided for.

Mr. George C. Goddard, called by the plaintiff, identified himself as sales representative and field factory representative for Ekolite, Ltd., manufacturers of the instant merchandise. His main duties consist of setting up dealerships to handle Ekolite's products, aiding in the promotion of sales and in the installation and service of the products. In this connection, he travels extensively along the west coast of the United States including Alaska. At the time of trial, he had been with Ekolite for 8 years and had worked in the factory where the imported items were manufactured. He also has contact with Ekolite's customers, instructing them in the use and maintenance of the equipment.

Goddard testified that the items under protest are sold in the trade as echo-sounding equipment for the location of fish and that he has traveled the whole continent instructing fishermen on their proper use for more efficient results in the detection of fish. Both by observation and use, he had also become familiar with similar competitive models sold by other companies. Specifically, he stated that the involved merchandise was similar to, and used for the same general purpose as, the MS 30 models manufactured by the Kelvin & Hughes Company which were the subject of the decision of this court in *Kelvin & Hughes America Corp.* v. *United States*, 53 Cust. Ct. 21, C.D. 2468.

The operation of the flasher units is based upon the use of electrical pulses which are converted into mechanical or sound pulses and transmitted through a unit mounted underwater on the bottom of the boat. The sound pulse is transmitted down until it strikes an object and is then reflected back and received through a receiving oscillator where it is converted back into an electrical pulse and amplified, causing an indicator bulb to flash. With the use of a flasher unit, it is impossible to tell whether the object detected is a fish or some other body in the water. Depending upon the strength of their amplifiers, these units can approximately indicate the bottom of the water. For example, the 55B model will reach a depth of 100 fathoms; model 60, 120 fathoms; and model 70, 240 fathoms.

The recording units operate similarly to the flasher units. However, instead of a flashing light, the presence of an object is recorded through the use of a stylus needle on a wet paper chart. The recording made is not permanent and will fade in time. Fish can be distinguished from plankton by the density of the signal recorded and plaintiff's exhibit 4, an actual recording, was circled by the witness in areas he felt indicated the presence of fish.

The witness stated that both types of sounding units are inaccurate in their depth indications being subject to errors of plus or minus 2 percent or about 4 to 5 fathoms. Ekolite manufactures other models used to accurately measure depths, and they possess stronger underwater units, stronger amplifiers, a different type of recording paper, and are usually designated in feet to allow finer and more accurate readings.

Plaintiff's collective exhibits 2 and 3 were received in evidence as advertising materials distributed with the sale of the imported units. They also contain instructions and information on size, operation, and general layout. Collective exhibit 2 contains photographs of flasher-unit models 55B, 77B, and 60, while collective exhibit 3 contains photos of recording-unit model B series and model ER 6.

On cross-examination, the witness admitted that the areas circled in plaintiff's exhibit 4 might also indicate the presence of reefs or rocks or some underwater obstruction so that the recording units can not definitely distinguish fish. He repeated that, within their respective fathom ranges, these units indicate approximately the depth of the water to the bottom and they can thus be of assistance in navigating in bad weather.

Defendant's collective exhibit A was received in evidence and identified by the witness as further examples of advertising materials used by Ekolite in selling this merchandise.

Back on redirect examination, Goddard emphasized that fishermen often send their recordings to Ekolite for instructions in reading them and, through experience, they become better able to distinguish fish indications from those made by other objects.

Plaintiff's main contention in this case is that the devices under protest are excluded from the provision for depth-sounding instruments in item 712.10 because they are similar to the echo-sounding equipment (model MS 30) the subject of *Kelvin & Hughes America Corp.* v. *United States, supra,* and they are classifiable according to the principle of that decision. The echo sounders in the *Kelvin & Hughes* case were classified under paragraph 368 (a) of the Tariff Act of 1930 as depth-sounding devices, instruments, or mechanisms intended or suitable for measuring distance. The court held them properly dutiable under paragraph 353 of the act as articles having as an essential feature an electrical element or device.

The Government argues, *inter alia*, that the *Kelvin & Hughes* case 'is distinguishable in that the court found that the instruments there under consideration were not and could not be used as accurate depth-sounding devices. However, in the instant situation, the argument continues, the evidence reveals that these devices can be used as navigational guides; that their measurements are accurate to a degree of plus or minus 2 percent;. and that in plaintiff's exhibits 2 and 3 various models are referred to as depth indicators and recorders of the ocean bottom.

The salient facts before the court in the *Kelvin & Hughes* case were these: The echo-sounding devices (MS 30) operated by transmission of an electrical wave which was converted into a mechanical or sound wave and directed down until it struck an object, then reflected back, reconverted, and recorded by a stylus on paper; the devices were sold to commercial fishermen and used to detect the presence of fish; although plaintiff's exhibit 1, two pages from a catalog, indicated they were used for navigation as well as to detect fish, the testimony indicated that they normally operated between 10 to 20 percent inaccurate in measuring depth but that they could be adjusted to within 5 percent inaccuracy; the MS 30 devices did not have provision for making accurate readings to determine depth and, in the opinion of the sole witness testifying, they would not constitute a good delivery for a depth-sounding device; the same manufacturer sold more accurate models of echo sounders which were designed and used for navigation.

In reviewing the evidence, the court said:

The uncontroverted record before the court in the instant case discloses that the type MS30 echo-sounding equipment in issue is used solely by fishermen to locate fish and the apparatus in issue has been adequately distinguished from echo-sounding equipment .such as the MS26 type produced by the plaintiff company which is used on ships for navigational purposes. The latter, due to its ability to supply accurate depth readings, is encompassed by the tariff provision for depth-sounding devices intended or suitable for measuring distance in paragraph 368(a) of the Tariff Act of 1930, as modified, whereas the type MS30 equipment before the court should be excluded from said provision due to the inaccuracy of its functioning and the fact that its primary function is to locate fish rather than to measure distance following the rationale of the *United Geophysical* case, *supra*.

The *United Geophysical* case (*United States* v. *United Geophysical Company*, 38 CCPA 137, C.A.D. 451) dealt with radar equipment that had been classified under paragraph 368(a) as a mechanism intended or suitable for measuring distances. The facts revealed that its bearing range was subject to a plus or minus 2 percent discrepancy (200 yards on a 6,000 yard range); that it could not discern targets at less than 250 yards; and that, if targets were less than 200 yards apart, it could

not separate or distinguish them. Applying the rule of *ejusdem generis* to paragraph 368, the court held:

From the evidence in the record, we believe the primary function of the subject device is to *detect* objects, rather than to *measure distances*, although at the same time we are fully aware of the importance of the latter function, no matter how inaccurately it may operate in this respect. However, we do not feel that the admitted errors to which it is susceptible in estimating or measuring distances will permit us to bring it within that degree of accuracy which we feel is required by the articles enumerated in paragraph 368, *supra*. We believe that the subject device does not belong within the provisions of paragraph 368, *supra*, but properly comes within the provisions of paragraph 353, *supra*. [Italics quoted.]

An echometer projector used as part of a depth-sounding device was the subject of the decision of this court in *Marconi International Marine Communications Co., Ltd.* v. *United States*, 30 Cust. Ct. 162, C.D. 1515. Depth was determined by operation of sound waves, and the instrument on which it was used was accurate to plus or minus 2 percent. Eighty percent of all cargo and passenger ships were equipped with this device and, although it was used by fishermen to locate fish and by cartographers in charting the ocean bed, it was primarily used as an aid to navigation. The collector's classification under the provisions of paragraph 368 was upheld by the court.

In yet another case involving depth-determining instruments, this court held certain depth gauges used by "Scuba" divers in underwater maneuvers to be properly within the provisions of paragraph 368(a). *U.S.D. Importing Co. et al* v. *United States*, 44 Cust. Ct. 80, C.D. 2156. The evidence established that the primary purpose of the gauges was to indicate the depth to which a diver descends although the recordings were in approximate terms.

See also *Harry Wilson Sales Agency* v. *United States*, 56 Cust. Ct. 195, C.D. 2627, where bicycle cyclometers, accurate to 90 percent, were held to be within paragraph 368(a).

The echo-sounding instruments in this case indicate depth, within their fathom-range limitations, to an accuracy of plus or minus 2 percent, and they are capable of navigational use when foggy weather conditions or darkness require it. On the other hand, it is abundantly clear from the evidence in this record, both oral and exhibit, that these instruments are sold to the commercial fishing industry for use in the detection and location of fish and that this is their primary function.

While the question of accuracy has been considered important in determining what articles are within the provisions for depth-sounding instruments in paragraph 368 of the 1930 Tariff Act, the degree of accuracy present in articles held dutiable under that paragraph has

varied and, in fact, it is recognized that there is no particular formula to ascertain such a requirement. *U.S.D. Importing Co. et al.* v. *United States, supra.* However, in each case reviewed above, classification within or without the provisions of said paragraph 368 has followed a determination of primary function or use. Thus in the *United Geophysical* and *Kelvin & Hughes* cases, *supra*, the articles were found to primarily function to detect targets and fish, respectively, and were without the scope of paragraph 368, while in the *Marconi International* and *U.S.D. Importing* cases, *supra*, the articles involved served primarily as depth-measuring instruments and, therefore, were held to be within the ambit of that paragraph. Specifically, in the *Marconi International* opinion, the court, in addressing itself to the holding in the *United Geophysical* case and after pointing out the fact that there was no specific provision for radar equipment, distinguished that case further "for the *compelling reason* that it was found that the primary function of the device was to detect objects rather than to measure distances" [emphasis supplied]. Indeed, it was held in that case (*Marconi*) that the chief use of the article must control its classification.[1]

By the judicial yardstick developed in these cases dealing with depth-measuring instruments under paragraph 368 of the Tariff Act of 1930, the articles at bar, although capable of measuring distance for navigational purposes, would be held to be, without the scope of said paragraph where, as here, the record establishes that their primary function is in the detection and location of fish. Furthermore, like the record before the court in the *Kelvin & Hughes* case, *supra*, and unlike that in the *Marconi International* case, *supra*, there is evidence to the effect that the manufacturer of the imported instruments produces and sells other models possessing greater accuracy and more precise scale readings for surveying and measuring depth variations.

The defendant in its brief has pointed out that the statutory language in item 712.10 of the new tariff schedules is not in all respects the same as that in paragraph 368 of the old law. It makes no mention of the requirement that the articles thereunder must be intended or suitable for measuring distance, providing merely for depth-sounding instruments.

To discover the legislative intent behind this new provision, plaintiff has cited us statements contained in the 1960 Tariff Classification Study and the Sixth Supplemental Report to that study. These repositories of information have recently been explicitly recognized as pertinent authority for determining congressional intent with respect to

---

[1] In the *Kelvin & Hughes* decision, *supra*, the court likewise distinguished the *Marconi International* case on the basis of the record in *Marconi* showing the prime use of the instruments to be on cargo and passenger vessels as navigational aides.

the meaning and scope of terms appearing in the revised tariff schedules. *Rifkin Textiles Corp.* v. *United States*, 55 Cust. Ct. 341, C.D. 2600, affirmed *Same* v. *Same*, 54 CCPA 138, C.A.D. 925 (June 29, 1967). The cited material contains the following:

Tariff Classification Study, 1960, volume 7, page 157:

* * * The echo-sounding and ultrasonic sounding or detecting instruments and apparatus covered by item 712.10 reflect the rate currently applicable under paragraph 368(a) for such articles valued over $10 each, except that the rate of 7 cents for each jewel has been dropped as unimportant for this class of articles. * * *

Sixth Supplemental Report, Tariff Classification Study, May 23, 1963, page 14:

Change the superior heading immediately preceding items 712.10–12 from "Echo-sounding and ultrasonic sounding or detecting instruments and apparatus, and parts thereof:" to "Ships' logs, and depth-sounding instruments and apparatus, and parts thereof:"

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Explanation: This change is needed to avoid an unintended rate increase on certain ultrasonic sounding or detecting instruments and apparatus currently dutiable under paragraph 353 or paragraph 360, Tariff Act of 1930. This change results in such articles falling within item 712.50.

It would appear from this, as plaintiff argues, that the ultimate use of the language contained in item 712.10 was to reflect a continuity of distinction between depth-sounding instruments and instruments used for detection, as developed under the 1930 Tariff Act, rather than to institute a change in scope for classification purposes. Furthermore, it also appears that plaintiff's primary claim under the residual provision of item 712.50 of the schedules, the propriety of which has not been otherwise challenged by the defendant, is the intended classification for such detecting instruments.

Therefore, on the basis of the record presented and in consideration of the foregoing conclusions, we hold that the echo sounders involved in the consolidated protests in this case are properly dutiable at the rate of 12 per centum ad valorem under item 712.50 of the revised tariff schedules as other electrical measuring, checking, or analyzing instruments. To the extent indicated, the protests are sustained and judgment will be rendered accordingly.