UNITED STATES v. A. A. VANTINE & CO.

(Circuit Court of Appeals, Second Circuit. November 16, 1908.)

No. 10 (3,576).

1. CUSTOMS DUTIES (§ 35*)—CLASSIFICATION—"APPLIQUÉED ARTICLES"—"APPLIQUÉ."

It does not appear that there is any definition of "appliqué" in trade and commerce different from the dictionary definition of it as "any ornament laid out and applied on another surface, such as cloth"; and goods within this definition are dutiable under Tariff Act July 24, 1897, c. 11, § 1, Schedule L, par. 390, 30 Stat. 187 (U. S. Comp. St. 1901, p. 1670), relating to "articles * * * appliquéed." Further, it is not necessary that the design should be regular, conventional, or highly ornamental; and the provision includes a fabric to which a gilt cord has been applied in irregular loops of a crude design, being in this form fairly durable, permanent, and salable.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 110; Dec. Dig. § 35.*]

2. CUSTOMS DUTIES (§ 35*)—"ARTICLES"—GOODS IN THE PIECE.

The ordinary use of the word "articles" in tariff acts is a broad one; and there is nothing in the structure of Tariff Act July 24, 1897, c. 11, § 1, Schedule L, par. 390, 30 Stat. 187 (U. S. Comp. St. 1901, p. 1670).

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which would require the restriction of that term to completed articles. It may include woven fabrics in 25-yard pieces.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 110; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 1, pp. 511–515.

Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States, 18 C. C. A. 545.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 155 Fed. 149.

This cause comes here upon appeal from a decision of the Circuit Court, reversing a decision of the Board of General Appraisers (G. A. 5,688, T. D. 25,330), which sustained the action of the collector under Tariff Act July 24, 1897, c. 11, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1626).

J. Osgood Nichols, Asst. U. S. Atty.

D. Macon Webster, for importers.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The merchandise in question was assessed for duty by the collector as woven fabrics of silk at the rate of $3 per pound under paragraph 387 (Act July 24, 1897, c. 11, § 1, Schedule L, 30 Stat. 186 [U. S. Comp. St. 1901, p. 1669]). The importer contends that they should be classified under

"Par. 390. Laces, and articles made wholly or in part of lace, edgings, insertings, galloons, chiffon or other flouncings, nets or nettings and veilings, neck rufflings, ruchings, braids, fringes, trimmings, embroideries and articles embroidered by hand or machinery, or tamboured or appliqued, clothing ready made, and articles of wearing apparel of every description, including knit goods, made up or manufactured in whole or in part by the tailor, seamstress, or manufacturer; all of the above-named articles made of silk, or of which silk is the component material of chief value, not specially provided for in this act, and silk goods ornamented with beads or spangles, of whatever material composed, sixty per centum ad valorem. * * *"

The merchandise consists of woven fabrics of silk, in the piece, 25 yards long, boiled off, and having a cotton cord loosely wound with gilt paper sewed upon the fabric with a colored thread. These cords are doubled and run lengthwise of the fabric at distances varying from about 6 to 18 inches apart, and are looped in loops of a variety of shapes and sizes, at irregular intervals of from 9 to 12 inches, not exhibiting any semblance of regularity in design. The gilt cord is applied in Japan by child labor, and is attached to the woven fabric merely by basting with quite long stitches. It would, as the board finds, be an easy task, taking but a few moments with a pair of scissors in the hands of any unskilled person, to remove the entire cord from each roll of fabric; but, unless thus cut off or torn off by some force strong enough to break the thread, the gilt cord would remain where it was applied. We do not find any evidence to warrant the suggestion made on argument that the cord would drop off if the article were put to ordinary use as drapery or curtains or what not, where it was not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

particularly exposed to such tearing action. Many persons who buy the merchandise from the importers have the cord removed before delivery (the cost of doing so is too trifling to charge for) ; but others take it and use it as it comes.

We concur with Judge Platt in the conclusion that the evidence does not sustain the proposition that the cord is an impracticable, useless appliance put upon the silk solely as a subterfuge. There is nothing in the proof to show "any false or fraudulent practice or appliance" which would bring the importer within section 9 of the customs administrative act of 1890 (Act June 10, 1890, c. 407, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895]), referred to in the opinion of the board. The board held that the importation could not be considered appliquéed, for the reason that the "device is not ornamental," seemingly because the device was unconventional, not forming some regularly repeated design or pattern. But most Japanese designs are unconventional, and whether or not any particular device is ornamental is a matter of individual taste. There are persons who consider this one to be ornamental, or they would not use the fabric with it on for curtains and hangings. We concur with Judge Platt in the conclusion that:

"The merchandise as imported may not be in the highest sense ornamental, durable, permanent, and salable. It is, however, fairly so; and in those respects only differs from Exhibit 20 in suit, concededly an appliquéed article, in degree, if it differs at all."

The Standard Dictionary defines "appliqué" as

"Any ornament laid out and applied on another surface, such as cloth, wood, or metal; also, a piece of work or the kind of ornamentation thus produced."

Crude and unconventional though the design applied here may be, it is within this definition; and the evidence does not establish any different definition in trade and commerce. The importer's witnesses all call it appliqué, and the testimony of the commercial witnesses called by the government is not persuasive to the contrary. One of them says that "for an appliqué we need three materials. One fabric is applied to another; that is two; and the third material we use as an embroidery." In this statement he stands alone. All the other witnesses evidently understand that appliqué can be made with two materials. Another, contrary to the concession of nearly every other witness, and apparently of the board itself, that a certain illustrative Exhibit No. 20 is an appliqué, asserts that threads, however elaborate in design, cannot be an appliqué, but are embroidery, and says the sample of the article in suit is "an embroidered piece of goods." But the article is within paragraph 390, whether it is "embroidered by hand or machinery, or tamboured or appliquéed." Two witnesses stated, the one that he was not competent to judge as to Japanese appliquéed silks, the other that he had not handled that kind of Japanese goods. Two witnesses took the same view as did the board—that there must be some "motif" or regularity in the design; one stating that he would not consider it any appliqué because "it has no sense or meaning," the applied tinsel cord not being a design, to his way of thinking. The

166 F.—47

other would not consider the sample marketable, because there·is no regularity in the design, and the stitches are irregular and loose. The next testified that appliqué is in the line of embroidery, "an em-broidered ornamentation," and that he would consider the gilt thread applied on the material, and would call it embroidery, more than ap-pliqué. The last one testified that he did not know of any one pre-vious to 1897 calling goods like the sample an appliqué, "except that a person might call it an appliquéed embroidery in contradistinction to an embroidery that is sewed through and through. That is simply an abbreviation, if they called it appliqué." There is nothing to show that the merchandise is not covered by paragraph 390 on any theory of commercial designation. It should be noted that 10 witnesses were examined in the Circuit Court (5 for the importers, 5 for the govern-ment), none of whom were called before the Board of Appraisers.

The appellant contends that the "articles" referred to in this para-graph as embroidered or tamboured or appliquéed must be confined to such specific things as table covers, scarfs, curtains, etc., and should not include woven fabrics 25 yards long, which may be transformed into table covers, scarfs, curtains, etc., by cutting and hemming. The ordinary use of the word "articles" in the tariff is a broad one (Junge v. Hedden, 146 U. S. 233, 13 Sup. Ct. 88, 36 L. Ed. 953), and we find nothing in the structure of the paragraph (390) which requires any such restriction of its meaning.

The decision of the Circuit Court is affirmed.