MICHAELIAN & KOHLBERG, INC. *v.* UNITED STATES (No. 3818)[1]

---

[1] T. D. 47554.

United States Court of Customs and Patent Appeals, February 25, 1935

*Curie, Lane & Wallace (Samuel Isenschmid* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Ralph Folks* and *William H. Futrell,* special attorneys, of counsel), for the United States.

[Oral argument December 13, 1934, by Mr. Folks and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal by the importer from a judgment of the First Division of the United States Customs Court, one judge dissenting, overruling importer's protest against the classification and duty assessment of certain merchandise, imported from China, described as Chinese rugs and having stitching at their ends claimed to be embroidery.

The classification by the Collector of Customs was under paragraph 1116 (a) of the Tariff Act of 1930, which reads:

PAR. 1116 (a). Oriental, Axminster, Savonnerie, Aubusson, and other carpets, rugs, and mats, not made on a power-driven loom, plain or figured, whether woven as separate carpets, rugs, or mats, or in rolls of any width, 50 cents per square foot, but not less than 45 per centum ad valorem.

The claim of the protest relied upon is that the rugs are embroidered articles and as such properly classifiable under paragraph 1529 (a) of said act, the pertinent portion of which reads:

PAR. 1529. (a) * * * and fabrics and articles embroidered * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, * * * 90 per centum ad valorem. * * *

A sample of the merchandise was introduced in evidence as Exhibit 1. It consists of a figured rug, 2 feet wide by 4 feet in length, conceded to be composed wholly or in chief value of filaments, yarns or threads, and to have been made on a hand-driven loom. At each end the basic fabric of the rug, whitish in color, extends about an inch beyond the pile, and sewn into or through these extensions are some pinkish threads, or cords, which are alleged to constitute the embroidery. It is claimed that the principal design of this so-called embroidery is that of a Chinese dragon. The stitching is simple in character. The figure, claimed to be that of a dragon, is about 5 inches in length; somewhat irregular in outline, and two small blackish dots of velvety material are claimed to be representations of the dragon's eyes.

Various definitions of the term "embroidery" are quoted in the decision of the trial court, all of them having substantially the same meaning as that given in Funk & Wagnalls New Standard Dictionary, as follows:

1. Ornamental work done with a needle on cloth, canvas, leather, etc.; also the art of producing such ornamentation or the fabric ornamented.

2. Any variegated or elaborate ornamentation, especially if it resembles ornamental needlework; adornment; embellishment * * *.

This court has had frequent occasions to state and apply definitions of the term, one such occasion arising in the case of *Durbrow & Hearne Manufacturing Co.* v. *United States,* 9 Ct. Cust. Appls. 148, T. D. 37993, where it was said:

Without desiring to indulge in any discussion as to what is or is not embroidery, we note that it has been the subject of extended litigation. In G. A. 6205 (T. D. 26853), the board, by DeVries, General Appraiser, held that embroidery was "some ornamentation of a fabric by means of an aggregation of one or more kinds of stitches in pursuance of some design, the purpose of which is for ornamentation", and again the same general appraiser, in a dissenting opinion in G. A. 6589 (T. D. 28170), reached a like conclusion. The view set forth in the dissenting opinion seems to have been ultimately sustained by the Circuit Court of Appeals. See *Woodruff & Co.* v. *United States* (2 Ct. Cust. Appls. 186, T. D. 31942); also *Sloane* v. *United States* (7 Ct. Cust. Appls. 463, T. D. 37049).

In *United States* v. *Field & Co.,* 10 Ct. Cust. Appls. 183, T. D. 38550, after discussing numerous prior decisions, this court said:

Therefrom we think it is clearly inferable that to constitute an embroidery there must be by needlework processes an ornamental addition superimposed upon a previously completed fabric or article, * * *.

During the course of the trial of the instant case five witnesses were called to testify upon the subject of embroidery with particular relation to the stitches upon the involved merchandise, three of these being called by the importer and two by the Government. All seem to have been examined as experts.

We shall not quote at length from their testimony. The respective opinions below review it in considerable detail. It seems sufficient here to say that four of the five witnesses, including one of the two called by the Government, seem to have agreed upon the fact that the stitching was done by hand with needle and thread, that it was in conformity with a preconceived design, and that it responds to the well-known and judicially approved definitions of embroidery stitching. The other witness for the Government did not specifically declare that the stitches *per se* are not of the embroidery-stitch type, but expressed the opinion that there is no actual design or reproduction of a dragon, saying:

It looks like an imperfection to me; it doesn't look like a dragon or anything else.

This witness also testified positively and categorically that he did not consider the stitching upon the rug in evidence as a decoration or an embellishment, and, as an expert, testified that he did not consider the work to be embroidery.

As has been indicated, each of the other four witnesses took a different view. One of them, an officer of the appellant corporation, testified to having seen such work done in China and as to having ordered the figure of the dragon to be imposed upon the merchandise involved. Another, also an officer of the corporation, gave testimony as to many buyers expressing preference for the rugs having the dragon design upon them.

In the majority opinion of the trial court, it was said:

From the standpoint of volume it must be said that a preponderance of the testimony of these witnesses supports the contention of the protestant, but when the competency of the witnesses is considered on the basis of their respective business experiences there is at least room for grave doubt as to whether the same may be said of its weight.

Comment was then made upon the fact that only three of the witnesses were shown to have had experience in the rug business, two of them being connected with the importing firm, following which it was held that the one witness who testified that the work was not embroidery was the most competent witness "both from technical education and practical experience."

Then, after quoting definitions of embroidery, the majority continued:

We do not see how the stitching on each end of exhibit 1 can be considered anything but the crudest kind of an effort at embroidery, if by any reasonable stretch it can be called embroidery at all. Whatever may be said in that respect it is inconceivable that any disinterested person of intelligence could classify it as either ornamental or an embellishment.

It was further said in the majority opinion:

* * * we are convinced that the placing of this crude stitching on these rugs was simply a subterfuge to escape in part the lawful duty to which the rugs of the type in issue would otherwise be subject to without question.

It would seem from the foregoing that the majority of the trial court, while not making a positive holding that the stitching cannot be "called embroidery at all", must have so thought because of its own belief, probably based upon inspection of the exhibit, that it cannot be *classified* as either ornamental or an embellishment.

It is not questioned that under all the definitions and authorities, ornamentation must be inherent in work in order to render it embroidery. .

The great difficulty which arises in applying this principle, however, grows out of the almost inevitable disposition to measure the work by the individual taste of the observer. This is not a rule which may be always followed with safety in the classification of merchandise if consistency in the administration of the customs laws is to prevail.

Paragraph 1529 (a), *supra*, of the Tariff Act of 1930, is, insofar as here material, the same as paragraph 1430 of the Tariff Act of 1922, which the courts have had frequent occasion to construe and apply.

The respective paragraphs of the two acts both contain, as applied to embroidered articles, the expression "by whatever name known, and to whatever use applied, and whether or not named, described or provided for elsewhere in this Act, when composed wholly or in chief value" of filaments, yarns, threads.

Construing that language in the Tariff Act of 1922, this court, in the case of *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, 479, T. D. 41367, said:

Every paragraph of the Tariff Act of 1922 must yield to that language, and that means that a duty of 75 per centum ad valorem [the rate fixed in that Act] must be levied *on every embroidered commodity* composed of yarns, threads, filaments, * * *. (Italics new here.)

The merchandise involved in the *Kayser* case, *supra*, consisted of certain sueded, warp-knit cotton fabric gloves which, in the absence of the embroidery provision of paragraph 1430 of the 1922 act, would apparently have been classifiable under the *eo nomine* provision for such gloves contained in paragraph 915 of the act. It was clearly stated in the opinion that the designation "cotton gloves" was more specific than the designation "embroidered articles", but by reason of the broad language quoted, *supra*, paragraph 1430 was held to invade paragraph 915 for tariff purposes and take therefrom the gloves involved.

Again, in the case of *United States* v. *Monroe Foreign Forwarding Co.*, 18 C. C. P. A. (Customs) 42, T. D. 44006, certain cotton gloves, obviously of a very cheap type, were held to be classifiable as embroidered articles because of having three lines of needlework composed of cotton threads imposed upon their backs.

In *United States* v. *Case & Co.*, 20 C. C. P. A. (Customs) 1, T. D. 45590, the view was expressed that certain dots imposed upon an elaborate lace embroidered the lace.

The majority opinion makes reference to crudity in connection with the stitching. This seems to be quite fully met by the decision of the United States Circuit Court of Appeals in the case of *United States* v. *A. A. Vantine & Co.*, 166 Fed. 735, wherein the court held that ornamentation was produced by loosely sewing cotton cord, wound with gilt paper, upon woven fabrics of silk, saying:

\* \* \* it is not necessary that the design should be regular, conventional, or highly ornamental; and the provision includes a fabric to which a gilt cord has been applied in irregular loops of a crude design, being in this form fairly durable, permanent, and salable.

From our examination of the record in the case, we are led to the conclusion that, insofar as the weight of the testimonial record is concerned, it preponderates in favor of the importer upon the essentials required to constitute embroidery, not only in volume but in substance. It is noted that the majority of the trial court were not positive in holding otherwise, but merely said, "there is room for grave doubt."

The importer was not required to prove his contention beyond a reasonable doubt or a "grave" doubt, but only by the weight of the evidence. It was, of course, proper to consider as evidence the sample of the merchandise.

We cannot but feel, however, that had the sample in this case not been present, the court, considering the oral testimony alone, would have reached a different conclusion as to the character of the merchandise, and it is our view that, in the light of the testimony concerning it, the sample should not be held to overcome the weight of the oral testimony with respect to its being an embroidered article.

The majority opinion asserts that no one of the witnesses "attempted to say that in all his experience he had seen upon a floor an embroidered floor covering \* \* \*."

Assuming this to be correct, it is immaterial, in view of the broad and sweeping language of paragraph 1529 (a), *supra*, as that language was construed and applied by this court in the *Kayser* case, *supra*, which held, in effect, that by reason of such language every paragraph of the 1922 act was invaded.

Rugs are not among the excepted articles named in paragraph 1529 (a), *supra*, and the sole question before us is whether those involved are embroidered articles.

The majority of the trial court seem to have attached some importance to the fact that two of the witnesses whose testimony was favorable to the importer had never had experience in dealing in or handling rugs. Since the sole question involved was that of embroidery, we agree with the dissenting judge that this fact is of no material consequence insofar as the weight to be given their testimony respecting embroidery itself is concerned.

There remains to be considered the holding of the majority to the effect that the stitching was a subterfuge to escape the higher rate of duty.

Generally speaking, the rule is well settled, having been often stated and approved by various courts, that an importer has the right to fashion his merchandise so that it shall be assessed with duty at the lowest rate. *Merritt* v. *Welsh*, 104 U. S. 694; *Seeberger* v. *Farwell*, 139 U. S. 608; *Lang et al.* v. *United States*, 10 Ct. Cust. Appls. 228, T. D. 38563. See also *United States* v. *Vantine*, *supra*, for a case quite analogous to the one at bar.

The brief for the Government directs our attention to an utterance of the Supreme Court of the United States in the case of *United States* v. *Citroen*, 223 U. S. 407, 415, reading:

When it is found that the article imported is in fact the article described in a particular paragraph of the tariff act, an effort to make it appear otherwise is simply a fraud on the revenue and cannot be permitted to succeed.

We note from the opinion that the foregoing expression was followed immediately by a sentence reading:

But when the article imported is not the article described as dutiable at a specified rate, it does not become dutiable under the description because it has been *manufactured or prepared for the express purpose* of being imported at a lower rate. (Italics ours).

Also, the court quoted with approval from *Merritt* v. *Welsh*, *supra*, the following:

So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred.

It is of interest to note that the merchandise involved in the *Citroen* case, *supra*, consisted of "thirty-seven drilled pearls—unset and unstrung—divided into five lots, separately inclosed", which the collector classified by similitude "as pearls set or strung, or jewelry", assessing duty, under the tariff act of 1897, at sixty per centum ad valorem.

Before their importation, the pearls had been exhibited in Paris, London, and Berlin, and from time to time, while being exhibited, they had been strung on a silk cord.

It is quite evident from the court's opinion that, as imported, they were fully prepared for stringing and that all that was required to make a necklace of them was to put them on a string.

Nevertheless, the Supreme Court held that the doctrine of similitude did not apply, and that the pearls were dutiable at only 10 per centum ad valorem, under the provision of the 1897 act, for "pearls in their natural state, not strung or set."

The court, speaking through Mr. Justice Hughes, then an Associate Justice, declared:

The inquiry must be—Does the article, as imported, fall within the description sought to be applied?

Then having pointed out that Congress had provided in separate paragraphs and at different rates of duty for pearls "set or strung" and "pearls not set or strung," the court said:

We are not concerned with the reason for the distinction; it is enough that Congress made it.

So, here we are not concerned with the reason for the inclusion, in paragraph 1529 (a) of the Tariff Act of 1930, *supra*, of the broad language which brings embroidered articles "to whatever use applied" within its terms, even though specifically named elsewhere in the act; it is sufficient that Congress did it.

We may add that insofar as the evidence in the case at bar is concerned, we find nothing to indicate that the importer's motive was that which the majority of the trial court seem to have surmised, even should it be conceded that the *classification of the merchandise* should be affected or determined by such motive had it existed.

Upon the whole record in the case, and in the light of the authorities, we feel that the judgment was erroneous and the same is *reversed*, and the cause *remanded* for further proceedings not inconsistent herewith.

LENROOT, J., dissents.