(C. D. 1265)

ALFRED MAZER v. UNITED STATES

United States Customs Court, Third Division

(Decided August 9, 1950)

*John D. Rode* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a protest, arising at the port of New York, against the collector's assessment of duty on live birds imported from the Netherlands at 50 cents each under paragraph 711 of the Tariff Act of 1930. It is claimed that they are properly dutiable at 25 cents each under said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802.

The pertinent provisions of the tariff act and the General Agreement on Tariffs and Trade are as follows:

PAR. 711. Birds, live: * * * all other live birds not specially provided for, valued at $5 or less each, 50 cents each; * * *.

Par. 711 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802].

Birds, live:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

 Birds not specially provided for:
  Song birds:
   Valued at $5 or less each_____ 50¢ each

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

 Other (except Bobwhite quail valued at $5 or less each):
  Valued at $2.50 or less each_____ 25¢ each

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The official papers show that the imported birds are valued at $1.50 per pair.

At the trial plaintiff called Alfred Mazer, the importer herein, who testified that he has been in the business of importing live birds for 17 years; that he has handled domestic and imported live birds, including songbirds; that he has handled probably a million birds; that he has sold them all over the United States to department stores, chain stores, pet shops, breeders, fanciers, and zoos; that the shipment involved herein consisted of Senegal finches including cordon blues, fire finches, combassous, silverbills, and spice birds; that the birds are about 4 to 4½ inches in length and of varied colors; that he has sold thousands of similar Senegal finches throughout the United States; that he sold them as finches and not as songbirds.  The witness stated that he had handled songbirds, such as canaries, shama thrushes, wood larks, and meadow larks; that the trade understanding of the term "songbird" is limited to the male singing canary and possibly the shama thrush and the lark; that Senegal finches do not come within the term "songbird"; that he has never heard them sing.

On cross-examination Mr. Mazer testified that a songbird is a bird that sings a succession of musical notes; that the cordon blues, silverbills, and gray singing finches chirp but they do not sing; that the robin, the thrush, and the nightingale could be classified as songbirds.

Frances Lenz, called as a witness for the plaintiff, testified that she is secretary and treasurer of Trefflich Bird & Animal Co.; that she has been with this firm for 8 years and prior to that was with Walstadt Bird Co., her father's business; that she has handled thousands of birds, both songbirds and birds of plumage; that she has personally bought and sold such birds in substantial quantities throughout the United States; that she is familiar with the types of Senegal finches here involved; that they are sold for their color, not for their song; that some of them have a chirp; that she has never heard a Senegal finch utter a succession of musical notes; that she has never heard of a Senegal finch being offered or sold in the United States as a songbird.

The Government called Dean Amadon, an ornithologist at the American Museum of Natural History, whose qualifications as an ornithologist were conceded.  He testified that he was familiar with

the types of Senegal finches involved herein; that all but the gray singing finch belong to the so-called weaver finches, *Ploceidae*; that the gray singing finch is a member of the true finch family, *Fringillidae*; that these families belong to a group of birds known as songbirds because they have a certain complicated system of muscles for regulating sound not possessed by other birds.

On cross-examination the witness testified that his statement, that certain birds are songbirds is based on the scientific classification of birds; that his definition is not based on whether or not the bird emits a succession of musical notes but whether or not, ornithologically speaking, it has a characteristic voice box; that his classification of songbirds includes about half the birds in the world; that it covers swallows, martins, cuckoo shrikes, drongos, crows, magpies, jays, bowerbirds, birds of paradise, titmice, nuthatches, creepers, bulbuls, dippers, and many others; that all of these are not capable of uttering a succession of musical notes; that he thinks of "song" in a biological sense as something that a male bird usually does to attract a mate; that when he says a bird is a songbird, he does not mean that it is necessarily capable of uttering a succession of musical sounds.

The plaintiff claims that the imported birds are not songbirds within the meaning of paragraph 711 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The defendant has not submitted a brief giving its views.

It appears from the evidence that the imported birds are known as Senegal finches; that they are sold for their plumage, not for their song; that they are not bought and sold in the trade as songbirds; that they do not sing or utter a succession of musical notes.

According to the witness Amadon, the imported birds belonged to two families which are classified as songbirds, but he stated that his classification was a scientific one. Tariff acts are drafted, not in the terms of science, but in the language of commerce, which is presumptively that in common use. *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117; *United States* v. *Fung Chong Co.*, 34 C. C. P. A. 40, C. A. D. 342. The common meaning of a term is a matter of law to be determined by the courts. *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. 110, C. A. D. 293; *United States* v. *Shalom & Co.*, 33 C. C. P. A. 29, C. A. D. 311. In making such determination, courts may receive evidence as to the common meaning, which evidence is advisory only, and may consult dictionaries and other authorities and also draw upon their own knowledge. *United States* v. *O. Brager-Larsen*, 36 C. C. P. A. 1, C. A. D. 388; *United States* v. *Florea & Co., Inc.*, 25 C. C. P. A. 292, T. D. 49396; *The Levy & Levis Co., Inc.* v. *United States*, 23 Cust. Ct. 8, C. D. 1180.

The following dictionary definitions of the term "songbird" are pertinent:

A bird that sings, or utters a succession of musical notes. (Webster's New International Dictionary [1944 edition].)

A bird that sings. (The New Century Dictionary.)

In the Encyclopaedia Britannica (1947 edition) the following statement is found in volume 20, page 996:

SONG BIRDS, birds whose vocal expression resembles music. Technically the suborder Passeres, "song birds," includes 48 of the 64 families of perching birds, Passeriformes, and about 8,000 of the 9,000 species. Among the perching birds it excludes such groups as the old world pittas, and the new world flycatchers, Tyrannidae, each species of which has a characteristic word, as "phoebe," "chebec," or the more melodious "pee-a-wee," in place of a song. The distinguishing mark of the Passeres is the possession of five to seven pairs of muscles controlling the syrinx, the organ of voice in birds; this brings within the suborder the crows and jays, many of which have rich and supple voices, some of them very human in tone, but *in the more popular sense they are not "song birds" because they lack the rhythm and melody which most true songsters possess.* [Emphasis supplied.]

Since the record establishes that the imported birds do not sing or utter a succession of musical notes, they are not songbirds within the common meaning of that term nor are they bought and sold commercially as songbirds.

We hold therefore that the imported birds are properly dutiable at 25 cents each under paragraph 711 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The protest is sustained and judgment will be rendered accordingly.