(C.D. 2600)

RIFKIN TEXTILES CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 13, 1965)

*Curran, Mahoney, Felix & Stim* (*Menahem Stim* of counsel) and *Weisman, Allan, Spett & Sheinberg* (*Sydney B. Wertheimer, Lester Samuels, Richard E. Nathan,* and *Joseph R. Margulies* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Andrew P. Vance* and *Charles P. Deem,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and FORD, Judges; FORD, J, dissenting

WILSON, Judge: The merchandise in the case at bar consists of a woven wool fabric, imported in the piece, having braid securely sewn over both selvaged edges for the full length of the piece. The importation in question was classified under item 336.50 as "woven fabrics, of wool * * * other" at the rate of 37.5 cents per pound and 60 per centum ad valorem. Plaintiff claims the merchandise is an ornamented fabric and, therefore, properly classifiable under item 353.50 of the Tariff Schedules of the United States at the rate of 42.5 per centum ad valorem as "ornamented fabrics in the piece."

Item 336.50 of the Tariff Schedules of the United States, under which the imported merchandise was classified, provides:

Other [woven fabrics, of wool weighing over four ounces per square yard]:
Valued not over $1.26⅔ per pound_____ 37.5¢ per lb. plus 60% ad val.

The portions of the tariff schedules pertinent to the classification of fabrics, ornamented with braid, provide in part as follows:

1. [Headnote to subpart B of schedule 3, part 4]:

Subpart B—Lace, Netting and Ornamented Fabrics

Subpart B headnotes:

1. This subpart covers only (a) textile fabrics in the piece, of any width, including edgings, insertings, galloons, flouncings, and all-overs and (b) textile motifs. *Fabrics described in part 3 * * * of this schedule are covered by item 353.50 if ornamented.* [Tariff Schedules, U.S. Code Cong. & Admin. News, p. 2336 (1963).] [Emphasis added.]

2. [Classification and rates for item 353.50]:

| Item | Article | Rate of Duty |
|---|---|---|
| 353.50 | Ornamented fabrics, in the piece, and ornamented motifs, not specially provided for_____ | 42.5% ad val. |

[Tariff Schedules, U.S. Code Cong. & Admin. News, p. 2337 (1963)]

3. Schedule 3 headnotes:

* * * * * * *

3. For the purposes of the tariff schedules—

(a) the term *'ornamented'*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and

(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem;

(ii) burnt-out lace;

(iii) lace, netting, *braid*, fringe, edging, tucking, or trimming, or textile fabric; [Emphasis added.]

\* \* \* \* \* \* \*

The record in the case at bar consists of the testimony of four witnesses for the plaintiff and seven witnesses who testified on behalf of the defendant, as well as five exhibits received in evidence.

Plaintiff's exhibit 1 is a sample representative of the merchandise at bar (R. 3), cut from a bolt of woven wool fabric, and, as heretofore indicated, with braid sewn over both selvaged edges for the full length of the piece (R. 4–5). Plaintiff's exhibit 2 is an affidavit by the president of the plaintiff-importer stating that plaintiff's exhibit 1 is a sample representative of the merchandise at bar and to which is appended the invoice of the exporter of the goods which describes the importation as ornamented wool fabric and states that the ornamentation is provided by the braid. Plaintiff's exhibit 4 is a skirt with braid thereon, manufactured from a woven wool fabric with braid identical to the importation at bar in all respects, except that the fabric employed in manufacturing the skirt has braid sewn for the full length of the piece over only one selvaged edge (R. 70). Plaintiff's exhibit 5 is a dress with braid thereon manufactured with woven wool fabric with braid identical to the imported merchandise in all respects, except that the fabric used in manufacturing the dress had braid sewn for the full length of the piece over only one selvaged edge (R. 77, 235). Defendant's collective illustrative exhibit A consists of a number of woolen fabrics, of different colors, and illustrates the manner in which the braid was attached to the fabric and what the material was like before the braid was sewn on (R. 18).

Plaintiff called as its first witness, Mr. Richard E. Nathan, member of the bar, who stated that, upon request of counsel for the plaintiff, he had made an examination of records of various commercial dictionaries in order to determine a definition for the word "ornamented." He then read into the record the definition of the word "ornament," as defined in Webster's New International Dictionary, second edition, unabridged (R. 50–52).

Plaintiff, in support of the claimed classification, called three witnesses on its behalf in so-called rebuttal for the purpose of showing that plaintiff's exhibit 1 was an ornamented fabric. The first of these was Mr. Jack Rosenblum, who stated that he is employed by Pepi Lynn, Inc., New York City, a manufacturer of ladies' skirts and sportswear, as a stylist, production man, and salesman (R. 190–191). The

court, after discussion, subsequently ruled (R. 229) that Mr. Rosenblum's testimony was admissible only for the purpose of connecting up plaintiff's exhibit 4 with the merchandise at bar. The witness stated that he had manufactured plaintiff's exhibit 4 from a fabric which had braid along only one selvage (R. 195), and which was not made from the merchandise before the court (R. 212). With respect to the use of selvage by the witness, Mr. Rosenblum testified, on cross-examination, as follows:

Q. * * * How do you normally use the selvage?—A. Normally if it doesn't have any ornamentation for any garment, I would cut it, and if it fell into the seam, that is where it would end up. [R. 224.]

   *       *       *       *       *       *       *

Q. And I understand your testimony now then to be that normally the selvage is used in the seam, or the hem, or some other part of the garment which is not visible?—A. That is right. [R. 225.]

Plaintiff also called as a witness in rebuttal for the purpose of showing that plaintiff's exhibit 1 was an ornamental fabric, Mr. Robert Frank, president of a dress manufacturing concern. The court sustained the objection of the defendant to any testimony to be given by this witness, on the ground that such testimony should have been produced on plaintiff's case "in chief" and not in rebuttal, in order to sustain the burden of proof imposed upon the plaintiff in this case (R. 227–230).

Plaintiff's last witness was Mr. Oscar Zinn, who stated that he is in charge of selling and styling textiles for the Rifzin Textiles Corp. (originally called Rifkin Textile Corp. (R. 244)). The witness stated that he is neither a stockholder nor an officer of the latter corporation (R. 231). Mr. Zinn further stated that he styled and assisted in the production of plaintiff's exhibit 5, the grey dress, and that the fabric used in the production of this article was similar to plaintiff's exhibit 1, except that the braid on plaintiff's exhibit 5 was only attached on one selvage (R. 234–235). Mr. Zinn then stated that the selvage on plaintiff's exhibit 1 is part of the fabric (R. 244–245).

As heretofore indicated, the issue in the case at bar is whether or not the imported fabric is "ornamented" so that it is properly classifiable under the pertinent item of the tariff schedule as an "ornamented fabric." Admittedly, we are here concerned with the common meaning of the word "ornamented" in our determination of the classification of the involved fabric. The common meaning of a term is a matter of law to be determined by the courts. In making such determination, courts may receive evidence as to the common meaning, which is advisory only, and may consult dictionaries and other authorities and may also draw upon their own knowledge. *Alfred Mazer* v. *United States*, 25 Cust. Ct. 67, C.D. 1265.

Reference to lexicographic authorities supplies the following definitions of the terms "ornament," "ornamented," or "ornamentation":

Webster's New International Dictionary, second edition, unabridged, 1956 edition, at page 1722:

ornament * * * 1. An article of equipment; an adjunct, primarily useful, as of clothing, furniture, etc. * * * 2. a That which is added to embellish or adorn; that which adds grace or beauty; an embellishment; a decoration. * * * b An object or quality which serves to adorn. * * * 3. * * * 4. Addition or inclusion of anything that beautifies; ornamentation; embellishment; decoration. 5. *Music.* * * * 6. *Print.* * * *

ornament; ORNAMENTED; ORNAMENTING. To provide with ornament; decorate; embellish; as, to *ornament* a room, or a city.

ornamentation * * * 1. Act or process or ornamenting; state of being ornamented. 2. That which ornaments; use of ornament.

New Standard Dictionary of the English Language, Funk & Wagnalls Company, New York, 1961:

ornament * * * *vt.* To embellish with ornaments; adorn; bedeck; * * *.

ornament, *n.* 1. A part or an addition that contributes to the beauty or elegance of a thing; an embellishment; adornment * * *. 2. Ornamentation in the abstract or as a quality, or ornaments collectively * * *.

ornamental * * * 1. *a.* Of the nature of ornament; serving to adorn * * *. II. *n.* An ornamental object * * *.

ornamentation * * * *n.* 1. The act of adorning, or the state of being adorned * * *. 2. Those things collectively by which anything is ornamented or adorned. 3. A form of accessory or dependent art whose function it is to ornament objects.

ornamentative * * * *a.* Tending or striving to adorn; ornamental.

The Oxford English Dictionary, volume VII, Claredon Press, Oxford, 1933:

ornament * * * 2. Something employed to adorn, beautify, or embellish, or that naturally does this; a decoration, embellishment * * *. b. *fig.* A quality or circumstance that confers beauty, grace, or honour. * * * 3. The action of adorning or fact of being adorned; adornment, embellishment, decoration (*lit.* or *fig.*); that in which this is embodied or consists.

ornament * * * *v.* * * * To furnish with ornament, to make ornamental; to adorn, deck, embellish, beautify. * * * Hence ornamented *ppl. a.*

ornamentability * * * Capability of being adorned: * * *.

ornamental * * * *a.* * * * Of the nature of an ornament, serving as an ornament or decoration; adding beauty and attractiveness; decorative. B. *Sb. pl.* Things that are ornamental; adornments, embellishments, as opposed to *essentials.*

ornamentation * * * 1. The action or process of ornamenting; the state of being adorned; * * * 2. That in which the process of ornamenting is embodied; the ornaments which adorn a thing collectively; ornament in general.

In Funk & Wagnalls New Standard Dictionary, 1956, page 2222, we find:

selvage, * * * The edge of a piece of cloth or textile fabric when so woven or finished that it will not ravel and needs no hemming; also, a narrow strip or list

of different texture or finish, woven along the edge of a fabric, which is to be removed or covered by the seam when the fabric is made up.

All of the witnesses for the defendant had extensive experience in the woolen textile industry, including embellishment operations and the styling, designing, and merchandising of textile fabrics, or in the business of embroidering various materials. A recital of their qualifications, as disclosed by the record, appears pertinent at this juncture. Defendant's first witness was Mr. Jack Schwartz, who stated that, for the past 24 years, he has been the executive director of the Pleaters, Stitchers, and Embroiderers Association, which comprises approximately 310 small manufacturers who perform almost 100 percent of the embellishing operation (including that of braid to fabrics) on apparel and piece goods in New York City.

Defendant's second witness was Mr. Edwin Wilkinson, president of the National Association of Wool Manufacturers, who stated that he has been engaged in the wool textile industry since 1927 and whose duties as president of the association include the representation of that body and its members before congressional committees, Government administrative agencies, and, in general, administration of the affairs of the association, which organization, it appears, produces approximately 70 percent of the wool textile fabrics on the woolen worsted system in the United States (R. 90–91).

The Government's third witness was Mr. George Selden, who stated that he is the vice president of Manchester Worsted Mills, Inc., and president of World Traditionals, Inc. The record discloses that the former company manufactures, weaves, and finishes worsted piece goods primarily for the menswear trade, its annual business being approximately 2½ million dollars; that World Traditionals, Inc., represents various woolen mills located in Japan and England. Mr. Selden stated that his duties in both companies had to do primarily with the styling and merchandising of the fabrics manufactured by them (R. 109–111).

Mr. Arthur Price, associate professor of textile science at the Fashion Institute of Technology in New York City and sometimes employed at the United States Naval Supply Research and Development Facility as a textile engineer, whose textile experience included textile research, manufacturing, and teaching, also testified on behalf of the defendant.

Defendant's fifth witness was Mr. Vincent Dante, designer and couturier of ladies' garments, who stated that he had been in business for himself for approximately 30 years (R. 139–140).

Defendant's next witness was Mr. William M. Kleinwald, president of Hollander Lace & Embroidery Corp., who stated that, since 1925 up to the date of trial, he has been in charge of the production

and styling of laces and embroideries. The record discloses that the Hollander company embroiders materials (including woven wool fabrics in the piece) exclusively for dress and blouse manufacturers.

Defendant's last witness was Mr. Lynwood J. Groder, stylist and designer for Pacific Mills Worsted Co., who stated that he has been engaged in the women's wearing apparel industry for approximately 26 years. Mr. Groder testified that, as a stylist, he does not create garments but that he designs fabrics "using ornamentation."

As heretofore indicated, all of the witnesses for the defendant testified that the imported fabric was not an ornamented fabric. In summary, the pertinent reasons for this conclusion were as follows: That braid is never applied only to the selvage to produce an ornamental fabric (Witness Schwartz, R. 60); that dress manufacturers do not use merchandise similar to plaintiff's exhibit 1 in the manufacture of dresses and skirts "because they couldn't use stuff that is on the selvage. They cut the selvage off" (Witness Schwartz, R. 66); that none of the fabrics in either plaintiff's exhibit 1 or defendant's collective illustrative exhibit A would be considered in the trade to be ornamented fabrics, because the braid is attached only to the selvage, which is cut off in the end use (Witness Schwartz R. 62–63), (Witness Wilkinson, R. 96), (Witness Price, R. 131–132), (Witness Dante, R. 142–143); that a selvage is the extreme edge of a fabric, and is not considered a useful part of the fabric, but is extraneous and is not considered in measuring its width (Witness Wilkinson, R. 95), (Witness Selden, R. 113), (Witness Price, R. 125), (Witness Dante, R. 140); that an ornamented fabric would usually have a pattern or design visible on the surface of the fabric or is one embellished in such a manner that it is evident on the fabric (Witness Wilkinson, R. 96), (Witness Selden, R. 115), (Witness Price, R. 125), (Witness Dante, R. 140), (Witness Kleinwald, R. 159); that embroidery is never applied to the selvage of a fabric, unless the selvage is part of a design (Witness Kleinwald, R. 156), (Witness Groder, R. 169).

With respect to plaintiff's exhibits 4 and 5, the witnesses for the defendant testified that the braid in plaintiff's exhibit 4 is on the selvage and that it is an ornamentation on the skirt (Witness Schwartz, R. 88); that the braid on plaintiff's exhibits 4 and 5 ornaments the garments but not the fabric from which they were produced (Witness Wilkinson, R. 101–102, Witness Price, R. 130); that the braid on plaintiff's exhibit 4 was put on there for a utilitarian purpose, "to cover a selvage which might be raw" (Witness Kleinwald, R. 165); that the braid on plaintiff's exhibit 4 did not decorate the garment, but was just "a black piping down the front of the goods" (Witness Groder, R. 176–177).

The plaintiff, in its brief, argues that the testimony of its witness, Mr. Rosenblum, substantiates its claim that the merchandise in ques-

tion is considered an ornamented fabric. However, the record discloses that the testimony of the witness was admitted solely for the purpose of establishing that the garment represented by plaintiff's exhibit 4 was produced from a fabric similar to the one here under consideration. The testimony of Mr. Rosenblum as to whether the imported merchandise is an ornamented fabric was, as heretofore indicated, ruled by the court to be improper rebuttal (R. 228–229). Further, the particular use of the merchandise at bar by plaintiff's witness Rosenblum is, in our opinion, irrelevant and immaterial in our present determination, inasmuch as the question of a specific use of this merchandise was expressly agreed upon by the parties not to be an issue in the case.

While it appears that the witnesses for the Government never had dealt with piece goods having braid along both selvaged edges, yet, as heretofore indicated, the record further discloses that most of defendant's witnesses were engaged for many years in various activities in the wool and textile industry and that the imported merchandise was a type of fabric with which all of the defendant's witnesses had dealt or had been familiar with. In our opinion, the witnesses for the defendant were competent to testify whether or not the imported merchandise was an ornamented fabric, and, specifically, whether it was so considered in the textile trade. Plaintiff, on its part, has not, in our opinion, discredited or impeached the testimony of defendant's witnesses to the effect that the merchandise represented by plaintiff's exhibit 1 is not an ornamented fabric; nor has it offered any competent evidence to the contrary in support of its claimed classification. The fact that some of defendant's witnesses stated that the garments represented by plaintiff's exhibit 4 (skirt) and plaintiff's exhibit 5 (dress) were ornamented by the braid on such articles (R. 130, R. 148), is, in our opinion, not relevant in the determination of the proper classification of the imported merchandise, which is a fabric and not a garment. Furthermore, the record discloses that these same witnesses testified that, even if the braid on the selvage as used in plaintiff's exhibits 4 and 5 ornamented those garments, this did not mean that the fabric from which these garments were produced would be considered an ornamented fabric (R. 130, R. 151–152).

Plaintiff, in its brief, has directed our attention to the holdings of our courts in certain cases in an effort to establish its claim that the imported merchandise is an ornamented fabric. However, in our opinion, the situation in those cases differed from that which obtains in the case at bar. Reference to certain cases and their inapplicability to the classification of the merchandise here in question may be briefly summarized as follows: In *United States* v. *A. A. Vantine & Co.*, 166 Fed. 735 (2d Cir. 1908), certain woven fabrics of silk, in the

piece, 25 yards long, having a cotton cord loosely wound with gilt paper sewed upon the fabric with a colored thread, were classified as woven fabrics of silk (paragraph 387, Tariff Act of 1897) and were claimed properly classifiable under paragraph 390 of the said act as "Laces * * * and articles embroidered by hand or machinery, or tamboured or appliqued * * *." The pertinent question there was whether the cords were ornamental in nature. The court, in the *Vantine* case, *supra*, held that "Crude and unconventional though the design applied here may be," it was within the definition of "appliqué." The finding by the court therein that the cords were ornamental necessarily required a finding that the fabric itself was ornamented. There was no question in the *Vantine* case, *supra*, as there is with respect to the braid here under consideration, as to whether the cords there involved had been applied to the body of the fabric. In the case at bar, however, a finding by the court that the braid is ornamental will not automatically predicate a conclusion that the fabric in question is "ornamented" thereby, since, in our opinion, it has been established that the braid has not been applied to the basic textile material of the merchandise.

In *Michaelian & Kohlberg, Inc.* v. *United States*, 22 CCPA 551, T.D. 47554, certain Chinese rugs, having certain stitching at their ends, done by hand with needle and thread, in a simple design said to represent a Chinese dragon, were claimed properly classifiable as embroidered articles. Testimony of witnesses there were in agreement that the stitching was in conformity with a preconceived design and that it responded to the well-known and judicially approved definitions of embroidery stitching. The court did not consider the question whether the stitching as applied ornamented the fabric, inasmuch as once it was determined that the stitching was a type of embroidery, the broad language of the pertinent paragraph of the tariff act under consideration required classification thereunder as embroidered articles. In the case at bar, however, the question for resolution is whether the braid ornaments the fabric, there being no dispute that the material on the selvages of the imported merchandise is braid. Accordingly, a mere finding that braid has been attached to the selvages of the fabric will not, in itself, be sufficient to sustain classification of the imported merchandise under item 353.50. In our opinion, the holding of our appellate court in the *Michaelian & Kohlberg* case, *supra*, is not determinative of the classification of the merchandise at bar.

In the case of *E. C. Carter & Son, Inc.* v. *United States*, 38 Cust. Ct. 368, C.D. 1889, the competition was between the provision in paragraph 1529(a) of the Tariff Act of 1930, as modified, for "Other Nets," as classified, and the provision in said paragraph, as modified,

for lace, made on a bobbinet-Jacquard machine. The representative exhibit in the case consisted of a concededly net base, upon which appeared certain square dots or spots. The record in that case definitely established that the dots or spots were inwrought and that they were forms, figures, or designs on the net foundation of the merchandise in question. Plaintiff's witnesses therein testified that the inwrought designs ornamented the net base, stating, in effect, that the representative sample came within their understanding of the term "lace." The court, in the *Carter* case, *supra*, held the merchandise there involved properly dutiable as "lace," stating, page 376, as follows:

> We are of opinion, and so hold, that when it has been established, as it has in the instant case, that the inwrought patterns or designs on the involved merchandise are ornamental or are of such character as to ornament the net fabric on which they appear, they are of sufficient importance to characterize as lace the fabric on which they appear * * *.

It would appear, therefore, that the court, in the *Carter* case, *supra*, was not asked to decide the question of ornamentation solely on the basis of a dictionary definition of the term "ornament" and a mere inspection of the merchandise claimed to be ornamented. In the case at bar, we have before us the testimony of the defendant's witnesses, well qualified in the textile trade, that the involved fabric was not ornamented, as commonly understood in the trade.

The Tariff Classification Study, published by the Tariff Commission on November 15, 1960, prior to the enactment of the tariff classification schedules, contains the following explanatory notes (schedule 3, pp. 6–7):

> \* \* \* \* \* \* \*
>
> Under the proposed definition of "ornamented," textile articles would no longer be assessed with rates of duty derived from paragraph 1529(a) on the basis of concealed, functionless pieces of braid, netting, etc. The rates derived from paragraph 1529(a) would apply only if such materials were used primarily for ornamentation.

It would appear from the explanatory notes above set forth that the term "ornamented," as given in the definition of headnote 3, *supra*, is restricted to material used primarily for ornamentation. Inasmuch as the above "study" was published prior to the enactment of the schedules by Congress and was before Congress at that time, it has, in our opinion, the same standing as Summaries of Tariff Information and other informative data and digests, which information is recognized by the courts as authoritative for the purpose of resolving questions relating to the meaning and scope of terms which appear in tariff acts and in determining the intent of Congress. *Textile Printing & Finishing Co., Inc.* v. *United States*, 49 CCPA 24, C.A.D. 789.

Of particular relevancy, in our opinion, in the determination of the proper classification of the imported merchandise, is the following

statement concerning item 353.50 which appears in the additional explanatory notes and background materials to the Seventh Supplemental Report of the United States Tariff Commission, issued pursuant to sections 101(b)(4) and 101(c) of the Tariff Classification Act of 1962 (P.L. 87–456), submitted to Congress, at its request, on August 14, 1963, prior to the effective date of the Tariff Schedules of the United States, page 100:

Ornamented Fabrics.  The status of fabrics in the piece with a braid attached to the selvage is subject to a different test under this item than under the applicable existing tariff provision.  The existing requirement that the article merely be "in part of" braid is less exacting.  Under the new provision, the braid must in fact ornament the fabric in an acceptable trade sense.  This would normally call for repetitive ornamentation throughout the length of the piece goods, not so affixed that it would in normal disposition be trimmed off or hidden.

The above statement, in our opinion, clearly indicates what was meant by the use of the term "ornamented fabrics" in item 353.50 of the tariff schedules.  The material, if any, applied to a fabric must ornament the fabric to constitute the latter an "ornamented fabric."  It would appear that if Congress had intended the application of braid to *per se* ornament a fabric, as contended in this case by the plaintiff, then it would have used the language "in part of" braid as it had in paragraph 1529(a) of the Tariff Act of 1930.  In our opinion, the fabric must be embellished or ornamented by the braid, and it is not sufficient that the braid has merely been applied in some manner, which factor appears sufficient to rule out plaintiff's interpretation of headnote 3 to schedule 3 with respect to item 353.50 based on the theory advanced by the plaintiff of braid being a type of ornamentation as opposed to a method of ornamentation.  Further, of special significance in our present determination, is the reference in the above supplemental report that "Under the new provision, the braid must in fact ornament the fabric *in an acceptable trade sense*" [italics ours]. In our opinion, the testimony of the trade witnesses supplied by the defendant to the effect that the merchandise represented by plaintiff's exhibit 1 is not an "ornamented fabric" conforms with the restrictive requirement indicated in the supplemental report that the braid must ornament the fabric "in an acceptable trade sense."  The uncontradicted testimony of defendant's witness Mr. Wilkinson (R. 93) and that of Mr. Selden (R. 113), as heretofore indicated, clearly establishes that the selvage is not considered part of the surface of the fabric.  Accordingly, in our opinion, the application of braid only to the selvages of the imported fabric does not ornament the fabric itself.

In our opinion, the record in the case at bar supports a finding that the imported merchandise is not an "ornamented fabric," as contem-

plated within the provisions of item 353.50 of the Tariff Schedules of the United States. Accordingly, we are of opinion and hold that the merchandise in question is properly dutiable under the provisions of item 336.50 of the Tariff Schedules of the United States at the rate of 37.5 cents per pound and 60 per centum ad valorem as "woven fabrics, of wool * * * other," as classified. The protest claim in this case is overruled.

Judgment will issue accordingly.

### DISSENTING OPINION

FORD, Judge: This decision is one of the first promulgated by the court under the new Tariff Schedules of the United States and, consequently, there is no case law controlling the statutory language involved herein. I would, based upon the record, samples, and basic principles of law formulated over the years in the field of customs jurisprudence, sustain the protest.

The new language involved, as claimed by plaintiff, provides for "ornamented fabric." A definition of the term "ornamented" is contained in the headnotes and provides as follows:

3. For the purposes of the tariff schedules—
    (a) the term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

        *        *        *        *        *        *        *

        (iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;

        *        *        *        *        *        *        *

Based upon this provision, the definition, the testimony, and the information contained in the Seventh Supplemental Report, which is quoted in the majority opinion, my colleagues have concluded that the imported fabric is not within the purview of item 353.50 because it is not ornamented "in an acceptable trade sense." This, in the view of the majority, is particularly so because the record establishes that the selvage is not considered part of the fabric. Hence, the majority concludes the application of braid only to the selvage does not ornament the fabric itself.

Braided articles under the provisions of the Tariff Act of 1930 fell within the purview of paragraph 1529(a) of said act. A review of the language employed in item 353.50 clearly indicates a complete change from the language of paragraph 1529(a), *supra*, since all that was required, under said paragraph, was that said article be ornamental and be in part of any of the named articles. There does not appear to be any intent on the part of Congress in enacting the Tariff Schedules of the United States to require a commercial designation of the term "ornamented fabric." Accordingly, under the basic principles of law

in this field, the common meaning is controlling, unless a party attempts to prove a commercial designation. The record does not indicate an intent on the part of either party to establish a commercial designation.

We, therefore, have before us only the question of the common meaning of the term "ornamented fabric." It is an elementary principle of law that this meaning is a question of law to be determined by the court, and testimony when offered is merely advisory. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676. In order to ascertain the common meaning, the court may refer to dictionary definitions, not as evidence of the common meaning, but merely as an aid to the court in making its determination. On the other hand, commercial designation of a tariff term is a question of fact and is not subject to judicial notice.

The definition contained in the headnote and quoted, *supra*, is of little aid, at least to the writer of this opinion, since said definition utilizes the word to be defined. Some of the other definitions of the terms "ornament," "ornamental," and "ornamentation" contained in the majority opinion are more illuminating. Most of these definitions utilize the terms "adorn," "deck," "bedeck," "embellish," or "beautify."

While this case is being brought under a new tariff law (TSUS), the basic principles of law have not been changed. A sample is still considered a potent witness. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 CCPA 26, C.A.D. 120.

An examination of the cloth involved herein establishes that the braid has been affixed on both selvages. What embellishes, adorns, bedecks, or beautifies an article varies with each individual. Consequently, what is pleasing to the eye of one person may be garish to the eye of another. Bearing in mind that the cloth involved herein is inexpensive and made of reprocessed wool, the application of a cheap braid in and of itself does not take it out of the term "ornamented." One would not ordinarily expect the same quality of braid to be utilized on expensive cloth as is used on inexpensive cloth. To me, based upon the record and the foregoing, plus the fact that a sample is a potent witness, the affixing of braid on the cloth, whether it is on the selvage or otherwise, is not for a utilitarian purpose. Therefore, it has been placed on the cloth for either the purpose of ornamentation or to obtain the lowest rate of duty. With respect to the latter purpose, an importer may fashion his merchandise in any manner which might subject the merchandise to the lowest rate of duty. The enactment of the Tariff Schedules of the United States does not in any way change this basic principle which has been approved by various courts over the years. *Merritt* v. *Welsh*, 104 U.S. 694; *Seeberger* v. *Farwell*, 139 U.S.

608; *Lang et al.* v. *United States*, 10 Ct. Cust. Appls. 228, T.D. 38563; *Michaelian & Kohlberg, Inc.* v. *United States*, 22 CCPA 551, T.D. 47554.

Therefore, if the involved cloth is ornamented, even though the braid is affixed for obtaining the lower rate of duty, it is still within the provision of item 353.50. It is interesting to note that all of the witnesses, with the exception of Mr. Selden, called on behalf of defendant, considered one or both of the exhibits (4 and 5) ornamented by braid but steadfastly refused to state that the fabric from which they were made was ornamented by the braid. Mr. Selden had no opinion as to whether the exhibits were ornamented since he was not a dress manufacturer. These statements are to say the least paradoxical. How could cloth having braid affixed to its selvages not be ornamented, while a garment made from this cloth and utilizing the braid from these selvages be ornamented with braid?

If the court is bound by the theory of trade acceptance set forth in the Seventh Supplemental Report, *supra*, what function does the court have? Common meaning is a question of law and not fact, and, under this theory, the testimony or fact would be controlling in a question of common meaning. This is contrary to the principles of law controlling common meaning. If Congress intended to make commercial designation controlling with respect to item 353.50, it could have easily done so by using the proper phraseology, such as "commercially known as ornamented fabric," or some other similar language. Since the Congress did not so provide such language, this court may only interpret the language enacted.

Based upon the foregoing, I am of the opinion that the imported fabric is ornamented within the purview of item 353.50 of the Tariff Schedules of the United States, and I would sustain the protest.