(C.D. 2627)

HARRY WILSON SALES AGENCY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 15, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RAO, FORD, and OLIVER, Judges

OLIVER, Judge: The protests listed above were consolidated at trial (R. 2) and cover the importations of two types of bicycle cyclometers, invoiced as Nos. M–26 and M–27, respectively. The merchandise was assessed for duty at the compound rate of 27½ cents each, plus 32½ per centum ad valorem, under the provision in paragraph 368(a) of the Tariff Act of 1930, as modified by T.D. 53832, for other mechanisms, devices, or instruments intended or suitable for measuring distance.

In its brief, plaintiff abandons all alternative claims originally put forth and relies solely on its claim for classification under the provision in paragraph 372 of said act, as modified by T.D. 54108, for machines, not specially provided for, dutiable at the rate of 11½ per centum ad valorem.

The pertinent provisions of the tariff statute are set down as follows:
Paragraph 368(a), as modified by T.D. 53832:

Clockwork mechanisms, and any mechanism, device, or instrument intended or suitable for measuring distance, speed, or fares, or the flowage of water, gas, or electricity, or similar uses, or for regulating, indicating, or controlling the speed of arbors, drums, disks, or similar uses, or for recording time, or for recording, indicating, or performing any operation or function at a predetermined time or times, all the above (except * * *); all the foregoing, whether or not in cases, containers, or housings:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Other (except mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity, and except time switches), valued each—

    Not over $1.10_____ 27½¢ each and
                                                  32½% ad val.

Paragraph 372, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

    Other (\* \* \*)_____ 11½% ad val.

At the trial, plaintiff introduced the testimony of Mr. Reuben Thoe, purchasing agent for the Harry Wilson Sales Agency, distributors of bicycles and parts. As purchasing agent, his duties involved the buying of bicycle parts and accessories. The witness stated that he was familiar with the items invoiced as M–26 and M–27 Lucas parts and identified them as cyclometers. He had personally handled them for his firm for the past 10 years. He testified that he knew how they worked and had actually seen them in use.

Plaintiff's exhibit 1 was received in evidence as a sample of the imported M–27 cyclometer (R.8). Mr. Thoe explained that the only difference between an M–26 and an M–27 cyclometer is that the M–26 is used on a 26-inch wheel and the M–27 on a 27-inch wheel. Plaintiff's illustrative exhibit 2 (R.8, 9) was offered as an example of a typical M–26 or M–27 cyclometer cut in two to expose the inner workings. With the use of these exhibits, the witness gave the following account of how they are used: The device as a whole is mounted on the front fork of a bicycle; as the wheel turns, a part called a "striker," consisting of a small piece of steel attached to a spoke of the front wheel, hits the star wheel on the cyclometer which in turn is attached to the axle or hub of the wheel; the striker turns this gear one space per revolution; inside the housing of the cyclometer, there is a series of gears which, by reduction, operate the dials and so indicate distance traveled. The witness also testified that the cyclometers contain no springs or clockwork mechanisms; that the dials represent mileage and that the instruments are 90 percent accurate. Finally, the witness gave testimony to the effect that exhibit 1 contains moving parts which transfer force or energy.

On cross-examination, the witness stated that it was his understanding that the cyclometers are about as accurate as automobile or bicycle speedometers. However, he explained, their accuracy varies directly with the difference between the diameter of the wheel and the particular size of the cyclometer used. Nevertheless, he agreed that an M–27 cyclometer employed on a 27-inch wheel "would be pretty accurate" (R.17). The witness also agreed that the main purpose of the cyclometers is to measure distance and, in fact, they have no other

purpose. The witness lodged no dispute with the following dictionary definitions read to him at the trial:

Webster's New Collegiate Dictionary:

cyclometer 1. An instrument to measure arcs of circles. 2. A contrivance for recording the revolutions of a wheel, as of a bicycle, and the distance traversed; odometer.

odometer An instrument to measure the distance traversed, as by a vehicle.

The record thus presented contains little or no basis for a factual dispute. The imported cyclometers are concededly used on bicycles for only one purpose, that is, to measure the distance traveled and to express that distance in miles and tenths of a mile. When used with the proper wheel diameter, their accuracy is comparable to the ordinary automobile or bicycle speedometer and, as such, sufficient to accomplish their intended purpose. It would seem, therefore, that they are properly classified as mechanisms, devices, or instruments intended or suitable for measuring distance within the purview of paragraph 368(a), as modified. However, it is the plaintiff's position that the issue in this case is controlled by the decision of our appellate court in *United States* v. *G. L. Electronics, Inc., Arrow Sales, Inc.,* 49 CCPA 111, C.A.D. 804, wherein, plaintiff argues, the court held that the provisions in paragraph 368 include only those items which contain clockwork mechanisms. Therefore, plaintiff concludes, since the imported articles obviously lack such mechanisms, they are not subject to classification under that paragraph. It will be noted that plaintiff's case stands or falls on the accuracy of its interpretation of the holding in the *G. L. Electronics* decision.

The appellate court in the *G. L. Electronics* case, *supra,* had before it for review a decision of this court sustaining plaintiff's protests for the classification of certain Toho testers under paragraph 353 of the Tariff Act of 1930, as modified, as articles having as an essential feature an electrical element or device. The collector had classified the merchandise under paragraph 368(a)(1)(2) of said act, as modified by T.D. 48093, "as instruments suitable for measuring electrical energy." The Toho testers consisted of two types, one described as a pocket-type volt-ohm-milliampere meter, and the other as a small 0–1 milliammeter. There was no dispute as to the facts in the case. The imported articles were in chief value of metal and had as an essential feature an electrical element. The Government contended, however, that they were more specifically provided for under paragraph 368 as meters to measure the flowage of electricity. The court of appeals found that the record sustained the conclusion that the imported meters measured amperage and were scientifically and mechanically different from devices known as watt-hour meters which measured electricity in terms of total power consumed.

At this point in its decision, the court cited with approval the statutory construction contained in the case of *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, T.D. 41203, which case involved the predecessor to paragraph 368 under the 1922 Tariff Act. In that case, the court determined that the statutory language covering mechanical devices for measuring certain specified things, such as time, distance, fares, or the flowage of water, gas, or electricity, pertained to meter devices which measured the *quantity* of the thing specified. In applying this judicial construction which, by recourse to legislative history, was deemed to have been adopted in the construction of paragraph 368 of the 1930 Tariff Act, the court held in the *G. L. Electronics* case that meters or gauges which merely record transient conditions, such as pressure, voltage, or amperage, did not accomplish the quantitative measurement required by the statute. Rather, measurements of the flowage of water, gas, and electricity were performed by the ordinary urban and suburban gas, water, and electric consumption meters, in which "flowage" is accumulated and recorded as a quantity. The vital difference in function between the imported merchandise and the kind of quantity-measuring meter which the court viewed as envisioned by the statute was described at one point in the following language at page 115 of the opinion:

One of the outstanding differences between an ammeter, voltmeter, or ohmmeter and a watt-hour meter is that the latter, as the witness said, contains clockwork, or at least a *similar mechanism* in the form of a gear train which operates the dials upon which the total number of kilowatt hours of electric power consumed is accumulated. [Emphasis added.]

There is nothing in the holding in that case which will sustain the interpretation argued for by plaintiff herein. First of all, the particular scope of the decision was directed primarily toward mechanical devices for measuring the flowage of electricity, gas, and water and not the entire complement of items provided for in paragraph 368. Secondly, and more importantly, the decision was based on the fundamental finding that the devices used for measuring certain specified things, encompassed within the provisions of that paragraph, are of a kind used to measure the quantity of the thing specified as opposed to devices which merely indicate an intermediate or transient condition in the thing to be measured. Thus, the imported articles in that case were not properly classified under the provisions of paragraph 368 because they were incapable of measurement in the statutory sense. Finally, the decision points out that meters or gauges which contain clockwork or *similar mechanisms* are embraced within the purview of the paragraph. Moreover, the similarity is related to operation not construction, that is, the device must be capable of recording the total or accumulated quantity of the thing being measured.

Not only is plaintiff's interpretation at variance with the actual holding of the court in the *G. L. Electronics* case but it also runs counter to the position taken by the appellate court on previous occasions. The predecessor to paragraph 368 under the 1922 Tariff Act was repeatedly held not to be limited to clocks or clockwork mechanisms. *United States* v. *Hengerer Co.*, 15 Ct. Cust. Appls. 390, T.D. 42568; *United States* v. *R. W. Cramer & Co.*, 21 CCPA 379, T.D. 46911; *Herman H. Sticht & Co. et al.* v. *United States*, 22 CCPA 362, T.D. 47386. Of particular note is the decision in the *Hengerer* case, *supra*, decided by the same court which rendered the decision in the *Bacharach Industrial Instrument Co.* case, *supra*. Addressing itself to a similar argument advanced by the plaintiff here, the court said (p. 393) :

Counsel for importer has called our attention to the case of *United States* v. *Bacharach Industrial Instrument Co.*, 13 Ct. Cust. Appls. 262, T.D. 41203, where this court, in referring to paragraph 368, among other things, said : "The manifest intent was to write a paragraph to protect the clock and clock mechanism industry." Counsel argues that the court intended by the quoted language to confine the paragraph to clock mechanisms. No such intention was entertained. The statute provides for many devices and mechanisms other than clocks. The language of the paragraph is most comprehensive, and was obviously intended to include all devices or mechanisms answering to the language of the paragraph, unless elsewhere more specifically provided for.

In *John B. Hewett Co., Inc.* v. *United States*, 48 CCPA 24, C.A.D. 757, decided a relatively short time before the *G. L. Electronics* case, the court sustained the classification of certain B.T.U. meters, devices which measure the amount of heat lost or gained in a water circulating system, under the provisions of paragraph 368(a) of the 1930 Tariff Act as instruments suitable for measuring the flowage of liquids. The meters were found to function, by analogy, in the same manner as electric and gas meters in measuring the consumption of energy, that is, they were used to measure a definite quantity of heat energy lost or gained. In this respect, they were held to be instruments which had similar measuring uses within the meaning of the expression "or similar uses" contained in paragraph 368. No mention was made and, therefore, no reliance was placed on their containing actual clockwork mechanisms or not.

It is apparent from the legislative history reviewed in the *Electronics* case, *supra*, that Congress intended to protect the clock and clockwork mechanism industries in legislating the provisions of paragraph 368. However, it is equally apparent, both from the plain language of the statute, as well as from judicial decisions construing that language, that Congress extended that protection to include a

great many other automatic [1] devices or mechanisms. The cyclometers in the instant case are clearly among those in this latter group. Their undisputed function is to measure distance, a performance specified in the statute. Furthermore, they record that performance in the required statutory sense, namely, the total or accumulated quantity of distance traveled.

For the reasons mentioned herein, plaintiff's position is untenable and its protests are hereby overruled. Judgment will be rendered accordingly.

(C.D. 2628)

[1] The Summary of Tariff Information, 1929, on Tariff Act of 1922, schedule 3, Metals and Manufactures of, referred to in the *Electronics* decision, notes also that instruments which depend on the manipulation of an operator, as opposed to those that record in an automatic manner, were excluded from the protection afforded under paragraph 368. No issue involving this distinction has been presented here.