(C.D. 3007)

The A. Lietz Co.
Hoyt, Shepston & Sciaroni } *v.* United States

United States Customs Court, Second Division

(Decided May 22, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Carl Eardley*, Acting Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before Rao and Ford, Judges

Rao, Chief Judge: The court is here called upon to determine the proper classification for customs duty purposes of certain pedometers imported from West Germany through the port of San Francisco.

At the time of importation, the customs authorities imposed duty thereon at the rate of 75 cents each and 32½ per centum ad valorem pursuant to the provisions of paragraph 368(a) of the Tariff Act of 1930, as modified by the Supplementary Trade Agreement with Switzerland, 90 Treas. Dec. 174, T.D. 53832, which read as follows—

Clockwork mechanisms, and any mechanism, device, or instrument intended or suitable for measuring distance, speed, or fares, or the flowage of water, gas, or electricity, * * *:

Mechanisms, devices, or instruments intended or suitable for measuring the flowage of electricity, * * *:

*      *      *      *      *      *      *

Other * * *—

\*　　\*　　\*　　\*　　\*　　\*　　\*

　　　Over $2.25 but not over $5_____ 75¢ each and
　　　　　　　　　　　　　　　　　　　32½% ad
　　　　　　　　　　　　　　　　　　　val.

Disagreeing with such action, plaintiffs are now before this court by way of a protest timely filed and contend that the imported articles should properly have been classified as machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3513, 98 Treas. Dec. 51, T.D. 55816, and subjected to duty at the rate of only 10½ per centum ad valorem.

At the time of trial, the court granted plaintiffs' motion to amend their protest by adding an alternative claim for classification of the merchandise as mathematical instruments in paragraph 360 of the tariff act, as modified. Inasmuch as the latter claim was not supported by testimonial evidence and was not pressed at the time of briefing, it is deemed to have been abandoned and will be dismissed.

A pedometer identical to those in issue was received in evidence as plaintiffs' exhibit 1.

Robert E. Hartman, merchandise manager for The A. Leitz Co., which company appears as the importer of record in the entry papers and is one of the parties plaintiff, was called to testify on behalf of plaintiffs. He stated he had used an instrument like exhibit 1 five or six times and had seen it used by others. Describing its use, the witness explained that the instrument is attached to a person's belt or placed in his pocket and as the person walks he jogs up and down. The jogging of the person's heel or foot hitting the pavement causes a pendulum in the mechanism to move back and forth. The movement of the pendulum approximates a normal or standard stride of 28 inches. The pendulum works against a double pull which acts as a counting mechanism of the steps taken by the user. The steps are registered on the face of the pendulum in yards. And if a person walks a sufficient number of yards, the instrument will indicate the distance in miles from 1 to 10, and on still another dial on the face of the instrument will even measure distances up to 100 miles.

Upon his attention being directed to his company's catalog listing of pedometers such as those at bar, the witness stated he agreed with the legend under said listing to the effect that such a pedometer "automatically registers distance covered by walker or runner" but that he did so "With qualifications as to the accuracy of the measurement." Hartman added that the instrument is "an excellent quality pedometer" and that it should work properly and adequately to register the distance covered by a walker or runner. In view of the witness' testimony that the instrument is not geared for precise accuracy, he was asked the purpose of the instrument. His reply was—

If you go on a hike you'd be interested in the distance that you went. The fact that you went 10 miles or 10½ miles would be somewhat immaterial, but you would be interested in knowing that you went somewhere in the neighborhood of 10 miles. That is principally the use of the instrument.

Plaintiffs, in their brief, rely principally on the case of *United States* v. *United Geophysical Company*, 38 CCPA 137, C.A.D. 451, in support of their contention that the pedometers at bar do not come within the provisions of paragraph 368(a) of the Tariff Act of 1930, as classified. The merchandise involved in the *United Geophysical* case, *supra*, consisted of surface-warning equipment. Its primary function was to aid in the detection of surface craft within a relatively small range, depending upon the size of the detected vessel, and to give information about its range and bearing. Classification of said merchandise as a mechanism, device, or instrument intended or suitable for measuring distance in paragraph 368 of the Tariff Act of 1930 was overruled and plaintiff's claim for classification within the provisions of paragraph 353 of said tariff act was sustained.

In the decision of the appellate court, the following statements appear—

From an analysis of the evidence, we find the involved radar does not give accurate or exact information, but provides the kind described as "fairly accurate." * * *

From the evidence in the record, we believe the primary function of the subject device is to *detect* objects, rather than to *measure distances*, although at the same time we are fully aware of the importance of the latter function, no matter how inaccurately it may operate in this respect. However, we do not feel that the admitted errors to which it is susceptible in estimating or measuring distances will permit us to bring it within that degree of accuracy which we feel is required by the articles enumerated in paragraph 368, *supra*. * * * [Italics quoted.]

The main reason for overruling the classification of the merchandise as distance measuring devices in the *United Geophysical* case, *supra*, was the fact that the primary function of the radar equipment involved was "to detect objects" rather than to measure distances.

A case more in point with the issue before the court is that of *U.S.D. Importing Co. et al.* v. *United States*, 44 Cust. Ct. 80, C.D. 2156. In that case, certain depth gauges used in "Scuba" diving were classified and held to be instruments intended or suitable for measuring distance in paragraph 368(a) of the Tariff Act of 1930, as modified.

After quoting from the *United Geophysical* case, *supra*, the paragraph relating to the primary function of the device there in issue, the court in the *U.S.D.* case stated as follows—

It is at once obvious that the foregoing provides no exact formula for ascertaining the degree of accuracy necessarily required of devices

covered by the provisions of paragraph 368(a). The decision simply affirms the proposition that the particular merchandise before the court, with its admitted inadequacies in the field of estimating or measuring distances, fell short of that degree. Equally important in the conclusion reached was the fact that the primary function of the article was detection rather than measurement, and it could not "even *discern* (much less *measure*) targets *at less than 250 yards*." [Italics quoted.]

Here, however, we have an article whose primary function is, in fact, the measurement of distance. How accurately it performs that function is evidently not of great significance to the Scuba diver. Apparently, its purpose is fulfilled if it indicates approximately the depth which a diver has attained. Since an approximate estimate of depth suffices in the use to which the gauge is applied, it would appear that an instrument which records that approximation is, for the purpose of Scuba diving, a depth-measuring instrument. Clearly, it is intended to be used in measuring underwater distances and it is practically suitable for that use. * * *

Notice is also taken of the case of *VDO Instruments* v. *United States*, 45 Cust. Ct. 77, C.D. 2200, wherein certain bicycle speedometer sets consisting of speedometers, flexible shafts, and hub drives, were classified for customs duty purposes as devices for measuring speed in paragraph 368(a) of the Tariff Act of 1930, as modified.

Plaintiff claimed that said merchandise should properly have been classified as machines, not specially provided for, in paragraph 372 of said act, as modified.

After referring to the above-cited case of *United Geophysical Company*, the court in the *VDO* case went on to say—

Factual differences between that case and the present one satisfy us that the two cases can be distinguished. In the case at bar, we have a device which was intended and designed for use on bicycles by means of which speed and distance could reasonably be determined and that is its only use. Von Payr testified that the devices like collective exhibit 1 were designed to give as accurate results as possible. Obviously, a speedometer, such as collective exhibit 1, when attached to a new bicycle, would give more accurate results than it would after the tires had become worn or otherwise defective. Moreover, the purpose for which it is used for determining the speed and mileage traveled on a bicycle does not require precision accuracy. The inaccuracies, shown by the tests made by Von Payr, represented by exhibit 2, do not detract from the classification of these speedometers as mechanisms, devices, or instruments "intended or suitable for measuring * * * distance, speed. * * *." The evidence establishes that the articles in dispute are designed and made to give as accurate results as possible in their intended use.

Of like effect is the case of *Harry Wilson Sales Agency* v. *United States*, 56 Cust. Ct. 195, C.D. 2627.

The evidence of record herein discloses that a pedometer of the kind in issue is used by a walker or runner to measure the distance traveled

and to indicate such distance on the face of the instrument in yards and miles. The devices are not intended or expected to register the distance covered with precise accuracy. As stated by Witness Hartman "The fact that you went 10 miles or 10½ miles would be somewhat immaterial, but you would be interested in knowing that you went somewhere in the neighborhood of 10 miles." As in the case of *VDO Instruments, supra,* involving bicycle speedometer sets, so too here the evidence established that "the articles in dispute are designed and made to give as accurate results as possible in their intended use."

A careful consideration of the record presented and a review of the cases cited by the parties and others applicable lead the court to sustain the classification of the instant pedometers as mechanisms, devices, or instruments, intended or suitable for measuring distance, within the purview of paragraph 368(a) of the Tariff Act of 1930, as modified by the Supplementary Trade Agreement with Switzerland, *supra.* Accordingly, the claim in the protest relied upon by plaintiffs is overruled.

Judgment will be entered accordingly.